UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
COMMONWEALTH OF THE NORTHERN                               :
MARIANA ISLANDS,                                           :
                                                           :
    *Plaintiff,*                                            :
                                                           :
v.                                                         :    No. 11 MISC 00099
                                                           :
WILLIAM H. MILLARD,                                        :
                                                           :
    *Defendant.*                                            :
                                                           :
-----------------------------------------------------------X
                                                           :
COMMONWEALTH OF THE NORTHERN                               :
MARIANA ISLANDS,                                           :
                                                           :
    *Plaintiff,*                                            :
                                                           :
v.                                                         :    No. 11 MISC 00100
                                                           :
PATRICIA H. MILLARD,                                       :
                                                           :
    *Defendant.*                                            :
                                                           :
-----------------------------------------------------------X

**PLAINTIFF JUDGMENT CREDITOR'S REPLY MEMORANDUM
IN FURTHER SUPPORT OF ITS APPLICATION FOR TURNOVER ORDER
PURSUANT TO N.Y. CPLR § 5225(B) AGAINST GARNISHEE MERRILL LYNCH**

KOBRE & KIM LLP

Michael S. Kim
800 Third Avenue
New York, New York 10022
+1 212 488 1200

*Attorneys for the Commonwealth of the
Northern Mariana Islands*

**TABLE OF CONTENTS**

Preliminary Statement ................................................................................................................1

Argument .....................................................................................................................................3

        A.     A TURNOVER ORDER PURSUANT TO N.Y. CPLR § 5225(b) IS
              PROPERLY PURSUED BY THIS APPLICATION .......................................3

        B.     THE EVIDENCE WILL SHOW THAT THE JUDGMENT
              DEBTORS EFFECTIVELY OWN THE ASSETS IN THE MILLARD
              FOUNDATION'S MERRILL LYNCH ACCOUNT .......................................5

        C.     EXECUTION IS NOT STAYED ...................................................................9

Conclusion ................................................................................................................................10

# TABLE OF AUTHORITIES

<u>Cases</u>

*Beauvais v. Allegiance Securities, Inc.*, 942 F.2d 838, 840 (2d Cir. 1991) ................................................................................................. 4, 5, 8

*Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) ....................................... 9 n.2

*IndyMac Bank, F.S.B. v. National Settlement Agency, Inc.*, No. 07 Civ. 6865, 2008 WL 3826519, at *3 n.1 (S.D.N.Y. Aug. 15, 2008) .................................................................................................. 4

*JW Oilfield Equipment, LLC v. Commerzbank AG*, 764 F. Supp. 2d 587, 591 (S.D.N.Y. 2011) ................................................................................................. 4

*Mitchell v. Lyons Professional Services, Inc.*, 727 F. Supp. 2d 120, 122-25 (E.D.N.Y. 2010) ................................................................................................. 4, 9 n.2

*Runaway Development Group v. Pentagon Technologies International, Ltd.*, 396 F. Supp. 2d 471 (S.D.N.Y. 2005) ...................................................... 3, 4

*Schwarzkopf v. Briones*, 626 F.3d 1032, 1038 (9th Cir. 2010) .................................. 9 n.2

*SEC v. Colonial Inv. Mgmt. LLC*, No. 07 Civ. 8849, 2010 WL 4159276, at *2 (S.D.N.Y. Oct. 6, 2010) ................................................................................................. 4

*Trustees of the 1199/SEIU Greater N.Y. Benefit Fund v. Sieger*, No. 07 Civ. 9744, 2011 WL 1630666 (S.D.N.Y. April 27, 2011) .................................................................................................. 4

<u>Other Authorities</u>

28 U.S.C. § 1963 .................................................................................................. 1

CPLR § 5225(b) .................................................................................................. 1, 2, 3, 4, 5, 9 n.2

Federal Rule of Civil Procedure 60 ............................................................... 10

Federal Rule of Civil Procedure 62(b) .......................................................... 10

Federal Rule of Civil Procedure 69 ............................................................... 1, 3, 4

Plaintiff, Commonwealth of the Northern Mariana Islands (the "Commonwealth"), a United States territory, having obtained judgments against William H. Millard and Patricia H. Millard (together, the "Judgment Debtors" or the "Millards") rendered by the U.S. District Court for the Northern Mariana Islands and registered in this Court pursuant to 28 U.S.C. § 1963, submits this reply memorandum in support of its application for a turnover order against garnishee Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch").

## Preliminary Statement

The Commonwealth moved pursuant to Federal Rule of Civil Procedure 69 and N.Y. CPLR § 5225(b) for an order directing garnishee Merrill Lynch to turn over the proceeds of a bank account held in the name of the "Millard Foundation." *See* Plaintiff Judgment Creditor's Memorandum in Support of its Application by Order to Show Cause for Turnover Order Pursuant to N.Y. CPLR § 5225(b) Against Garnishee Merrill Lynch (Docket Entry ("DE") 30 in Case No. 1:11-mc-00099-P1) ("Opening Brief"). The Commonwealth alleged that the assets in the account in fact belong to the Judgment Debtors. *See generally* Opening Br.; N.Y. CPLR § 5225(b).

The garnishee, Merrill Lynch, takes no position (but only requests that any resultant turnover order specifically provide for the liquidation of securities held in the account). *See* Response by Garnishee Merrill Lynch to Order to Show Cause Seeking Turnover of Funds (DE 41 in Case No. 1:11-mc-00100-P1). The Judgment Debtors, though served with papers, have not appeared to contest the Commonwealth's application.[1]

---

[1] In addition to service of the Commonwealth's application upon the Millard Foundation (for which the Millards are the officers and directors), the Millards were also personally served with the application at their Cayman Islands residence on January 25, 2012 (signed for by M. Lavina), at 7512 Dr. Phillips Blvd in Orlando, Florida (the business address associated with numerous Millard-related entities) on January 24, 2012 (signed for by C. Patel), and at their part-time residence at 8749 The Esplanade, Apartment 12, in Orlando, Florida on January 24, 2012.

1

The Millard Foundation (the "Foundation"), an organization for which the Judgment Debtors are the sole officers and directors, has intervened to oppose the application. *See* The Millard Foundation's Memorandum of Law in Opposition to Plaintiff's Order to Show Cause (DE 33 in Case No. 1:11-mc-00099-P1) ("Opposition Brief"). First, the Foundation argues that the instant application is procedurally improper. *See* Opposition Br. at 7-9. Second, the Foundation asserts that the Judgment Debtors have no personal interest in the bank account at issue. *See id.* at 9-19. Third, the Foundation contends that execution upon the judgments ought to be, in any event, stayed pending resolution of certain litigation in Florida. *See id.* at 19-20. The Court should reject all three arguments.

*First*, the Commonwealth's application is procedurally proper. It is well-established that a judgment creditor with a federal judgment, levying on property alleged to belong to the judgment debtor may bring a proceeding in federal court under N.Y. CPLR § 5225(b) by motion and need not institute a separate plenary action. *See infra* Argument, Section A; *see also* Opening Br. at 5-7.

*Second*, whatever the formal legal status or claimed charitable purposes of the Foundation, we expect to demonstrate at the hearing that the funds held in the name of the "Millard Foundation" are functionally the Millards' personal property. The evidence at the hearing will show that the Millards have with impunity made personal, non-charitable use of the Merrill Lynch bank account at issue. *See infra* Argument, Section B; *see also* Opening Br. at 7-8. By its opposing papers, the Foundation has put at issue the purpose and intent underlying various asset transfers from the Foundation to third parties, and asserted that they are the operations of a legitimate charity. The Commonwealth alleges that these transfers demonstrate that the Judgment Debtors use the account as their personal funds under the guise of a charitable foundation. We submit that the Judgment Debtors – who originally funded the Foundation, who directed or carried out the transfers at issue, and who managed the Foundation – should be

compelled to appear at the hearing and have their explanations and credibility assessed by the Court.

*Third*, the Millards' children's attempts in the U.S. District Court for the Middle District of Florida to resist discovery as against their finances and to attack the underlying Judgments are no obstacle to the instant application. The U.S. District Court for the Middle District of Florida has rejected the Millard children's attempt to stay those proceedings on the basis of an attack on the underlying judgments, and also permitted issuance of writs of execution in relation to the judgments against the Millards. *See infra* Argument, Section C.

Accordingly, we respectfully request that the Court should require the Millards to appear and give evidence at the hearing of this matter and, if the Court finds that the Foundation's funds were in fact treated by the Millards as their personal assets, order that the funds be turned over to the Commonwealth.

## Argument

### A. A TURNOVER ORDER PURSUANT TO N.Y. CPLR § 5225(b) IS PROPERLY PURSUED BY THIS APPLICATION

Despite the clear authority to the contrary identified by the Commonwealth in the Opening Brief (*see* Opening Br. at 5-7), the Foundation asserts that the Commonwealth is required to initiate a new action to seize assets which are in the possession of one other than the Judgment Debtors, pursuant to N.Y. CPLR § 5225(b). *See* Opposition Br. at 7-9. For that proposition, the Foundation relies exclusively on *Runaway Dev. Grp. v. Pentagen Techs. Int'l., Ltd.*, 396 F. Supp. 2d 471 (S.D.N.Y. 2005). *See* Opposition Br. at 8. That reliance is misplaced.

Although the language of CPLR 5225(b) calls for "a special proceeding" (which is a term of art under New York state civil procedure), a judgment creditor seeking relief for a federal judgment in federal court pursuant to Rule 69 of the Federal Rules of Civil Procedure and N.Y. CPLR § 5225(b) is permitted to do so by motion. A useful treatment of the issue can be found in *Mitchell v. Lyons Prof'l. Servs., Inc.*, 727 F. Supp. 2d 120 (E.D.N.Y. 2010) (cited in

the Opening Br. at 6-7).  In *Mitchell*, after examining New York law and the Second Circuit's approach under Federal Rule of Civil Procedure 69(a), the court held that a judgment creditor proceeding in federal court under N.Y. CPLR § 5225(b) need not institute a separate action and may proceed by motion.  *See Mitchell*, 727 F. Supp. 2d at 122-25.

As the Foundation has done here, the *Runaway* case was cited by the garnishee in *Mitchell* for the proposition that a new action must be commenced.  In holding otherwise, the court in *Mitchell* noted that the *Runaway* court "did not cite or discuss any of the authorities on this issue and its brief conclusion is not persuasive." *Mitchell*, 727 F. Supp. 2d at 125 n.2 (citing *IndyMac Bank, F.S.B. v. National Settlement Agency, Inc.*, No. 07 Civ. 6865, 2008 WL 3826519, at *3 n.1 (S.D.N.Y. Aug. 15, 2008) (noting that federal courts besides *Runaway* have allowed CPLR 5225 relief when sought by motion in the underlying action)).

And the courts of this District routinely entertain proceedings by motion for post-judgment relief under the N.Y. CPLR provisions which otherwise call for a "special proceeding," including under section 5225(b).  *See, e.g.*, *Beauvais v. Allegiance Secs., Inc.*, 942 F.2d 838, 840 (2d Cir. 1991) (cited by the Foundation in the Opposition Brief at 9, and discussing trial court decision which granted turnover application brought by an order to show cause); *Trustees of the 1199/SEIU Greater N.Y. Benefit Fund v. Sieger*, No. 07 Civ. 9744, 2011 WL 1630666 (S.D.N.Y. April 27, 2011) (granting petition for section 5227 turnover order on summary judgment); *JW Oilfield Equip., LLC v. Commerzbank AG*, 764 F. Supp. 2d 587, 591 (S.D.N.Y. 2011) (permitting section 5225(b) proceeding by petition for writ of execution and turnover order); *SEC v. Colonial Inv. Mgmt. LLC*, No. 07 Civ. 8849, 2010 WL 4159276, at *2 (S.D.N.Y. Oct. 6, 2010) ("I agree with the reasoning of Judge Cogan in [*Mitchell*], in which he held that a judgment creditor proceeding under N.Y. CPLR section 5225(b) may proceed by motion, and need not institute a separate action.").  There can be no serious dispute about the procedural propriety of the Commonwealth's application.

### B. THE EVIDENCE WILL SHOW THAT THE JUDGMENT DEBTORS EFFECTIVELY OWN THE ASSETS IN THE MILLARD FOUNDATION'S MERRILL LYNCH ACCOUNT

The Commonwealth is entitled to a turnover order because the Judgment Debtors have a current interest in the Merrill Lynch account which is evidenced by their historical practice of making personal use of the funds of the Foundation. *See* Opening Br. at 7-8; *see also Beauvais*, 942 F.2d at 840 (a judgment creditor is entitled to a turnover order where the judgment debtor has an interest in the property and either the judgment debtor is able to possess that property or the creditor's rights to the property are superior to the possessor's or the title holder's).

First, there is no dispute that the money in the Merrill Lynch account originated entirely from the Millards. The Foundation contends that "[t]he Foundation was capitalized by a contribution of approximately $2 million from the Millards in 1982." Opposition Br. at 10. And there is no dispute that the Foundation's Merrill Lynch account has also received subsequent transfers from an account at Clariden Leu AG in Switzerland, where the Millards keep some of their personal funds. *See* Reply Declaration of Michael S. Kim dated January 30, 2012 ("Kim Reply Decl.") at ¶ 18; *see also* Declaration of Michael S. Kim dated January 18, 2012 (DE 30-1 in Case No. 1:11-mc-00099-P1) ("Kim Opening Decl.") at ¶ 30. Further, and directly contrary to the Foundation's incorrect assertion that there have been no transfers between the Foundation's accounts and the Judgment Debtors' personal accounts (*see* Opposition Br. at 17 (the bold and underlined passage)), as recently as October 2008, the Millards wrote a check drawn on their personal account to the Foundation. *See* Kim Reply Decl. at ¶ 18.

Second, there is no dispute that the Millards control the disposition of the funds in the Foundation's Merrill Lynch account. The Foundation's tax filings appended to the Opposition Brief identify the Millards historically as the sole officers and directors of the Foundation. (William Millard is listed as the President, and Patricia Millard as the Director). And numerous outgoing wire transfers of the Foundation's assets authorized by William Millard personally

5

demonstrate his control over the disposition of the funds in the Merrill Lynch account.  *See* Kim Reply Decl. at ¶ 16; Kim Opening Decl. at ¶ 18.

Third, we expect the evidence will show that the Millards have used the funds in the Foundation's Merrill Lynch account with impunity for personal, non-charitable purposes, evidencing their ability to access and use those funds for whatever purpose they choose (charitable, personal, or otherwise).  For example, William Millard holds a Visa debit card that is connected to this account and that he has used to make purchases at Amazon.com, the Four Points Hotel, and Cayman Airways.  *See* Kim Reply Decl. at ¶ 14; Kim Opening Decl. at ¶ 28.

Further, there is evidence of transfers of substantial funds, directly and through intermediary entities, <u>from</u> the Foundation <u>to</u> the Millards' children and to companies controlled by them, for the personal use of the Millards' children.  For example, between June 2009 and March 2011, the Foundation transferred approximately US $371,000 to an entity called the Lifestar Institute.  The Lifestar Institute is another ostensibly charitable organization with which the Millards are associated, and for which Barbara Logan (the Millards' daughter) is apparently empowered to sign the checks.  *See* Kim Reply Decl. at ¶¶ 8, 9; Kim Opening Decl. at ¶ 24.

The Lifestar Institute, in turn, in 2009 and 2010, paid approximately US $6,600 to Silverbox Entertainment LLC ("Silverbox") and US $95,000 to Calypso Building Logistics, Inc. and Calypso Business Logistics, Inc. (together, the "Calypso Companies").  *See* Kim Reply Decl. at ¶¶ 8, 11; Kim Opening Decl. at ¶¶ 24, 26.  Silverbox is ostensibly a for-profit company owned by the Judiths (the Millards' daughter and her husband) and the Calypso Companies are purportedly for-profit corporations owned by the Logans (another of the Millards' daughters and her husband).

The financial activities of these various other purported legitimate business entities shows that they are used to funnel money from the Millards' offshore accounts to the Millards' relatives in the U.S. for personal living expenses.  For example, the Calypso Companies have

6

been the beneficiaries, since 2007, of over US $1 million from the Millards' personal Swiss account and their account in the Cayman Islands in the name of Capital Properties Ltd. (the entity which owns the Millards' personal home in the Cayman Islands), and has been shown to have paid for seemingly personal, non-business expenses of the Logans, including payments for pet care, and has further made payments to Silverbox, the Judiths' company. *See* Kim Reply Decl. at ¶¶ 5, 6, 10; Kim Opening Decl. at ¶¶ 23-25. During that same period, from 2009 to 2010, the Logans also received US $75,000 personally from the Lifestar Institute. *See* Kim Reply Decl. at ¶ 19; Kim Opening Decl. at ¶ 24. And bank and credit card records of Silverbox, which also received funds from the Foundation, show spending on non-business items such as groceries and jewelry, and transfers to the Judiths' personal account. *See* Kim Reply Decl. at ¶¶ 12, 13, 17; Kim Opening Decl. at ¶ 27.

That the Foundation is registered ostensibly as a charitable organization, or that the Millards have part of the time used the Foundation's assets for legitimate charities (*see generally* Opposition Br.), is of no moment. As the Foundation concedes in the Opposition Brief, the Commonwealth is entitled under New York law to a turnover order upon a showing (1) that the Millards have an interest in the Merrill Lynch account and (2) that either (a) they are also entitled to the funds in the account, or (b) the Commonwealth's rights to the funds in the account are superior to the Foundation's. *See* Opposition Br. at 9 (citing *Beauvais*, 942 F.2d at 840). This is not a case where the account at issue contains the Millards' money comingled with legitimate charitable donations from innocent third parties which would have to be disentangled from the Millards' personal assets. As described above, there is no evidence of any other source than the Millards for the assets in the Merrill Lynch account.

Here, the evidence of William Millard's use for personal expenses of a debit card linked to the Foundation's Merrill Lynch account, along with evidence of numerous and substantial transfers from the Foundation to the Judgment Debtors' family members and their companies,

7


shows that the Millards have put the Foundation's assets to their own personal whims, whether that is to contribute to a legitimate charity or to pay for family living expenses. Because the evidence will show that the Millards have an interest in the account and can make personal use of the assets in the account, the assets in the Foundation's Merrill Lynch account should therefore be turned over to the Commonwealth towards the satisfaction of the judgments.

In opposing the instant application, aside from advancing a conclusory position that the Foundation's transfers are legitimate, the Foundation does not explain the purposes for these asset transfers. *See generally* Opposition Br. For example, the Foundation does not explain why hundreds of thousands of dollars were paid to the Lifestar Institute (according to the Foundation in the form of grants and a loan) during a period in time when the Lifestar Institute itself paid the Calypso Companies, owned by the Logans, US $95,000, and paid the Logans personally, US $75,000.

Particularly given the Millards' apparent efforts to make themselves judgment proof (*see generally* Kim Opening Decl.), the Court should decline the Foundation's invitation to simply accept its assurances that the Millards have no interest in the Merrill Lynch account. Respectfully, the Court should require the Millards to be subject to examination at the hearing of this matter concerning their intent and the purposes for which they caused the Millard Foundation to use the assets in the Merrill Lynch account.[2]

---

[2] The Commonwealth is alternatively entitled to a turnover order on the theory that the Millard Foundation is the alter ego of the Judgment Debtors. *See, e.g.*, *Mitchell*, 727 F. Supp. 2d at 123 ("It is equally well settled that this statute [section 5225(b)] may be used to pierce the corporate veil or assert alter ego liability."). Under New York choice of law principles, the law of the state of the entity's formation (in this case California) determines the inquiry. *See, e.g.*, *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995). Under California law, alter ego liability arises where "there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased; and second, where adherence to the fiction of the separate existence of the corporation would sanction a fraud or promote injustice." *Schwarzkopf v. Briones*, 626 F.3d 1032, 1038 (9th Cir. 2010) (the treatment by an individual of the assets of the corporation as his own and the diversion of assets to the detriment of creditors are among the factors suggesting an alter ego relationship).

### C.    EXECUTION IS NOT STAYED

The Foundation also argues that the Commonwealth's application should be stayed pending resolution of certain litigation in Florida. *See* Opposition Br. at 19-20. Specifically, the Foundation contends that the Commonwealth's application should be stayed during the pendency of the Millards' children's attempt to have the underlying judgments set aside by an action filed in the U.S. District Court for the Middle District of Florida. Absent from the Foundation's Opposition Brief, however, is the fact that the Middle District of Florida has already expressly refused to stay execution of the judgments.

That Court came to its decision with the benefit of voluminous briefing on a prior Rule 60 motion and motions for protective orders and to stay discovery and execution brought by the Millards' children, and on a motion for issuance of writs of execution brought by the Commonwealth. Ultimately, and despite the pendency of the Millards' children's action purporting to challenge the judgments (which the Commonwealth has moved to dismiss because they plainly lack standing and for other reasons), the U.S. District Court for the Middle District of Florida permitted discovery in aid of the judgments, as well as issuance of writs of execution in relation to the judgments against the Millards, which writs were issued on January 6, 2012.

This request by the Foundation to stay enforcement proceedings is the latest attempt by the Millards to attempt to challenge the validity of the final judgments by proxy while refusing to appear before any U.S. court. As described above, the Millards' children sought to stay discovery and execution (without posting any security) and to set aside the judgments against their parents, using declarations executed by the Millards themselves. Yet the Millards have not made an appearance in any U.S. court. And in a separate action in this Court, before Chief Judge Preska, the Millards' former attorney and asset protection specialist, Terry Giles, Esq., attacked the validity of the judgments and requested a stay of post-judgment proceedings. *See* DE 24 in Case No. 1:11-mc-00100-P1. Chief Judge Preska observed: "What you believe about

9

the judgment is wholly irrelevant. The judgment debtors are not here. They are not yelling about the judgment. They know where we are." *See* Kim Reply Decl. at ¶ 21.

Until the Judgment Debtors themselves appear to contest the Judgments, for example pursuant to Federal Rule of Civil Procedure 60, and until they post security to stay execution pursuant to Rule 62(b), the Commonwealth is entitled to continue its valid post-judgment efforts. Accordingly, the Foundation's request to stay the Commonwealth's application should be denied.

## Conclusion

The Court should order the Millards to appear at the hearing of this matter to be examined, and if persuaded that the funds in the Merrill Lynch account in the name of the Millard Foundation are subject to levy on the judgments, order Merrill Lynch to turn over proceeds of the account to the Commonwealth.

Dated: January 30, 2012
      New York, New York

                              Respectfully submitted,

               By:    s/ Michael S. Kim
                         Michael S. Kim

                         KOBRE & KIM LLP
                         800 Third Avenue
                         New York, New York 10022
                         Tel: +1 212 488 1200
                         Fax: +1 212 488 1220

                         Marcus J. Green
                         1919 M Street, N.W.
                         Washington, D.C. 20036
                         Tel: +1 202 664 1900
                         Fax: +1 202 664 1920

                         *Attorneys for the Commonwealth of the Northern Mariana Islands*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of January, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I further certify that I mailed the foregoing and the notice of electronic filing by overnight delivery to the following non-CM/ECF participants:

William & Patricia Millard
  453 Britannia Drive, The Village of Britannia, Grand Cayman, KYI-1202
  8749 The Esplanade #12, Orlando FL 32836
  7512 Dr. Phillips Blvd, Suite 50-356, Orlando, FL 32819

Howard Meyers, Esq.
Meyers, Meyers & Tonachio
5 Hanover Square
New York, New York 10004
(212) 509-2500
*Attorneys for Merrill Lynch, Pierce, Fenner & Smith, Inc.*

Rosamund Lockwood, Esq.
Burkhalter, Kessler, Clement & George
2020 Main Street, Suite 600
Irvine, California 92614
(949) 975-7500
*Attorneys for the Millard Foundation*

David Kittredge, Esq.
LaRoca, Hornik, Rosen, Greenberg & Blaha
40 Wall Street, 32d Floor
New York, New York 10005
(212) 530-4822
*Attorneys for the Millard Foundation*

_____
Michael S. Kim

KOBRE & KIM LLP

800 Third Avenue
New York, New York 10022
Tel: +1 212 488 1201
Fax: +1 212 488 1220
*Attorneys for the Commonwealth of the Northern Mariana Islands*

11