```
                                            USDS SDNY
                                            DOCUMENT
                                            ELECTRONICALLY FILED
                                            DOC #: _____97_____
                                            DATE FILED: 4/17/12
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
COMMONWEALTH OF THE NORTHERN MARIANA
ISLANDS,

Plaintiff,

    -against-

WILLIAM H. MILLARD,

Defendant

    -and-

THE MILLARD FOUNDATION,

Defendant Intervenor.

11 MC 99 (LAK)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
COMMONWEALTH OF THE NORTHERN MARIANA
ISLANDS,

Plaintiff,

    -against-

PATRICIA H. MILLARD,

Defendant

    -and-

THE MILLARD FOUNDATION,

Defendant Intervenor.

11 MC 100 (LAK)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### MEMORANDUM OPINION

Appearances:

Michael Sangyun Kim
Andrew C. Lourie
Marcus Green
Adriana Riviere-Badell
KOBRE & KIM LLP

*Attorneys for Plaintiff*

Scott D. Musoff
Timothy G. Nelson
Gregory A. Litt
SKADDEN, ARPS, SLATE, MEAGHER &
    FLOM LLP

*Attorneys for Third-Party Garnishee*
*Canadian Imperial Bank of Commerce*

2

LEWIS A. KAPLAN, *District Judge*.

The plaintiff, the Commonwealth of the Northern Mariana Islands ("CNMI"), is a judgment creditor as to two tax judgments obtained against the two individual defendants, the Millards, nearly two decades ago. It here moves for a turnover order, pursuant to Rule 69 of the Federal Rules of Civil Procedure and N.Y. CPLR § 5225, as well as a preliminary injunction and additional discovery. CNMI alleges that the Millards have funds in accounts housed in Cayman Islands subsidiaries of garnishee Canadian Imperial Bank of Commerce ("CIBC") and that CNMI is entitled under New York law to an order compelling CIBC to turn over the money.

This Court concludes that the text of the New York CPLR limits the ability of the Court to issue a turnover order to instances in which the entity to which the order is directed has "possession or custody" of property. As CIBC does not have "possession or custody" within the meaning of the statute, CNMI's motion is denied. Nevertheless, there is significant merit to CNMI's argument, which involves an unsettled question of state law. Absent interim relief, there would be a substantial risk that the funds in question would be dissipated during any appeal. Accordingly, the Court grants an injunction requiring maintenance of the *status quo* pending appeal. The Court also denies CNMI's motion to compel discovery as moot.

*Facts*

*Prior Proceedings*

In 1994, CNMI obtained two separate judgments for unpaid taxes against the defendants, William Millard and Patricia Millard, in the respective amounts of $18,317,980.80 and $18,318,113.41. The amounts have grown, with interest, to more than $118 million.

The Millards resided in CNMI beginning in 1987, but relocated before CNMI

obtained the judgments. In 2010, through various investigative means, CNMI learned that the Millards had renounced their U.S. citizenship and were residing in the Cayman Islands.

In March and April 2011, CNMI registered the judgments in this Court and the Southern District of Florida. It proceeded to file various turnover motions, pursuant to Federal Rule of Civil Procedure 69(a)(1) and N.Y. CPLR § 5225(b), naming as garnishees various financial institutions that hold, or allegedly hold, accounts belonging to the Millards. To this point, eight different judges in this District—sitting in Part 1—have presided over these related matters.[1]

On March 5, 2012, Judge Cote, sitting in Part 1, directed CIBC to show cause why it should not be (1) enjoined from permitting any transactions involving any property in which either or both of the Millards has an interest, and (2) ordered to turn over the funds, property, and other assets in which either or both of the Millards has an interest. The Court also temporarily restrained CIBC from certain activities related to accounts in which either or both of the Millards, or various corporate entities under their individual or collective ownership, holds an interest, and directed CIBC to preserve any documents pertaining to such accounts. The restraint remains in place. This Court heard argument on the motion on March 22, 2012.

*The Evidence*

CNMI alleges that the judgment debtors hold accounts at, or at subsidiaries of, CIBC FirstCaribbean International Bank (Cayman) ("CFIB"), a 92%-owned-and-controlled subsidiary of CIBC, both in their own names and in the names of various corporate entities under their individual or collective ownership. It further alleges that "since leaving CNMI, the Millards have employed

---

[1]    By order dated March 23, 2012, this Court retained assignment over the above-captioned cases, removing them from the Court's Part 1 docket. *See* DI 73.

4

sophisticated tactics in an effort to put their assets beyond the reach of CNMI and of the United States, including by the use of offshore tax havens and bank secrecy jurisdictions, by renouncing their United States citizenship[], and by creating a network of entities that purport to own or control the assets which the Millards in fact beneficially own or control."[2] After an apparently inadvertent disclosure of non-party subpoenas to members of the Millard family and the concomitant revelation that CNMI was undertaking post-judgment activities against the judgment debtors, "the Millards appear to have taken steps to further dissipate assets and conceal information."[3] As a result, the Court previously issued confidentiality orders and temporary restraining orders in these proceedings, and has permitted registration and discovery to be pursued under seal. This action also is proceeding under seal at this time.

Through non-party discovery, CNMI identified assets at CFIB in which it believes the judgment debtors hold interests, and it subsequently initiated this proceeding. CNMI alleges that the CFIB assets "are controlled personally by the Millards and appear to be used to hold personal assets and, in conjunction with several other entities and individuals, to otherwise obscure the Millards' ownership of assets, to move money between the Millards and their family and friends, and between offshore and onshore accounts, and to pay personal expenses of the Millards and their family members."[4] CNMI asserts a right to possession of the assets to satisfy its judgments that is superior to the rights of the persons and entities in whose names the assets are held—which, if true, would subject the assets to recovery by CNMI.[5]

---

[2]     Pl.'s Br. at 4.

[3]     *Id.* at 6.

[4]     *Id.* at 7–8.

[5]     *See id.* at 8.

Relying on publicly available documents containing information regarding CIBC's corporate organization, management, and consolidated financial statements, CNMI asserts that "CIBC has the control, power, authority and practical ability to order [CFIB] to turn over funds on deposit in the name of the Millards and entities controlled by the Millards pursuant to an order from this Court."[6] It notes that CIBC has imposed its "governance structure" on CFIB;[7] that CIBC and CFIB have significant personnel overlaps, even at senior levels of management;[8] and that CIBC requires CFIB to comply with U.S. legal requirements such as Sarbanes-Oxley and the PATRIOT Act.[9] In CFIB's promotional materials, CFIB states that the CIBC governance structure "affords the parent company full oversight of the risk and control framework of all [of CFIB's] operations."[10] Finally, CNMI points to a Federal Reserve document representing that, "[w]ith respect to access to information about [CIBC's] operations, . . . [CIBC] has committed to make available to the [Federal Reserve] Board such information on the operations of [CIBC] and any of its affiliates that the Board deems necessary to determine and enforce compliance with . . . applicable federal law."[11]

CIBC responds that CFIB is actually two "separate corporate entities, twice removed from CIBC."[12] It represents that while CFIB itself "does not offer deposit accounts in the Cayman

---

[6]    Pl.'s Br. at 13.

[7]    *See* Mar. 5 Kim Decl. ¶ 77.

[8]    *See id.* ¶¶ 83, 90.

[9]    *See id.* Ex. 83.

[10]    *Id.* Ex. 84 at 13.

[11]    *Id.* Ex. 70 at 4.

[12]    CIBC Opp. at 4.

6

Islands, . . . two of its wholly-owned subsidiaries" do.[13]  Each, it states, is a "legally separate and independent entit[y]."[14]  It further states that CIBC and CFIB "do not have an information sharing agreement and that CIBC is unable to access accounts or account information held by [CFIB] or its subsidiaries."[15]  Finally, CIBC represents that both CFIB subsidiaries in the Cayman Islands are subject to that country's banking-secrecy laws.[16]

## Discussion

*Jurisdiction*

In post-judgment proceedings that are "effort[s] to collect . . . federal court judgment[s], the courts have permitted judgment creditors to pursue, under the ancillary enforcement jurisdiction of the court, the assets of the judgment debtor even though the assets are found in the hands of a third party."[17]  The Court therefore has subject-matter jurisdiction over this action.  In addition, the Court has personal jurisdiction over CIBC based on its many activities in and contacts with New York,[18] a finding that is unopposed by CIBC.

---

[13]  *Id.*; *see* Aylett Decl. ¶ 7.

[14]  CIBC Opp. at 5; *see* Aylett Decl. ¶ 5.

[15]  CIBC Opp. at 5; *see* Aylett Decl. ¶ 8.

[16]  *See* Hatfield Decl. ¶ 15 Ex. C; *see* CIBC Opp. at 5–6.

[17]  *Epperson v. Entm't Express, Inc.*, 242 F.3d 100, 106 (2d Cir. 2001).

[18]  *See* Mar. 5 Kim Decl. ¶¶ 63–75; *see also* Pl.'s Br. at 10.

*Turnover Order*

These proceedings are governed by Federal Rule of Civil Procedure 69, which states in relevant part that "[t]he procedure on execution and in proceedings supplementary to and in aid of judgment or execution must accord with the procedure of the state where the court is located but a federal statute governs to the extent it applies."[19]  As operable through Rule 69,[20] New York law authorizes a judgment creditor to initiate a special proceeding "against a person in *possession or custody* of money or other personal property in which the judgment debtor has an interest."[21]  Where "the judgment debtor is entitled to the possession of such property" or "the judgment creditor's rights to the property are superior to those of the transferee," the court "shall" order the person "in possession or custody" to pay money in satisfaction of the underlying judgment.[22]  The task of the Court, then, is to determine whether CIBC has "possession or custody" of assets held in CFIB accounts located in the Cayman Islands.

"It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature."[23]  Without guidance from either state or federal courts as to the

---

[19]    FED. R. CIV. P. 69(a).

[20]    As this Court recently stated, Rule 69 "motions are not special proceedings brought under New York law." *Saregama India, Ltd. v. Mosley*, Nos. 11 Misc. 84 & 12 Misc. 45, 2012 WL 955520, at *1 (S.D.N.Y. Mar. 20, 2012) (citing, *e.g.*, *Schneider v. Nat'l R.R. Passenger Corp.*, 72 F.3d 17, 19–20 (2d Cir. 1995)).  "Pursuant to Rule 69, however, New York law does not govern to the extent that a federal statute or the Federal Rules of Civil Procedure apply."  *Id.*  As several courts in this Circuit have concluded, because the Federal Rules provide that a civil action is the only form of action in federal civil practice, *see* FED. R. CIV. P. 2, the fact that CNMI did not seek turnover orders through special proceedings—which are "unknown in federal courts,"—is immaterial here. *Saregama*, 2012 WL 955520, at *1 & n.7.

[21]    N.Y. CPLR § 5225(b) (emphasis added).

[22]    *Id.*

[23]    *Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 91 N.Y.2d 577, 583 (1998).

8

specific question here, the Court is left with the text of Section 5225(b) in evaluating the ability of a court to order a bank to turn over funds located in accounts of its foreign subsidiaries.[24]  In attempting to predict what the New York courts would conclude here as to the meaning and import of "possession and custody," the Court is reminded of the fact that "[t]he will of [a legislature] is . . . subject to inevitable distortion by reason of the inadequate medium through which it must be communicated."[25]  This case presents one such example.

As stated above, Section 5225(b) authorizes courts to order turnover of property that is in the "possession or custody" of the garnishee.[26]  The fundamental question before the Court, then, is:  What does that phrase mean?

CNMI elects to color Section 5225(b)'s "possession or custody" requirement as a practical one that necessarily implicates the concept of "control."[27]  It argues that "the judgment debtors own the assets that are held in a bank in the Cayman Islands and CIBC controls that bank and has the legal and practical ability to order that bank to turn over the judgment debtors' assets

---

[24]     *See N.Y. Skyline, Inc. v. City of N.Y.*, — A.D.3d —, —, 939 N.Y.S.2d 42, 45 (1st Dep't 2012) (("Since the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof." (internal quotation marks omitted)).

As CIBC notes, *see* CIBC Br. at 10, any discussion of the applicability of New York's "separate entity" rule, under which "each bank is a separate entity" and "in order to reach a particular bank account, the branch of the bank where the account is maintained must be served," *Nat'l Union Fire Ins. Co. v. Advanced Emp't Concepts, Inc.*, 269 A.D.2d 101, 101, 703 N.Y.S.2d 3, 4 (1st Dep't 2000), is inapposite given the subsidiary status of CFIB here.

[25]     *Grossman v. Young*, 72 F. Supp. 375, 378 (S.D.N.Y. 1947) (Rifkind, *J.*).

[26]     N.Y. CPLR § 5225(b).

[27]     *See* Transcript, Mar. 22, 2012 ("Mar. 22 Tr."), at 10 (counsel for CNMI, stating, "Your Honor, I will start off on the issue of control since that is central to an analysis of this case.").

to CNMI."[28]

  CNMI's argument has substantial persuasive force. Both federal and New York rules

of civil procedure contain various provisions using a phrase similar to that in issue here, and courts

routinely have interpreted that phrase—"possession, custody, or control"[29]—in practical terms along

---

[28]   Pl.'s Reply at 5 (emphasis removed).

[29]   *See* FED. R. CIV. P. 26(1)(A)(ii) (requiring the initial disclosure of "a copy . . . of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment"); FED. R. CIV. P. 34 (authorizing service of discovery requests for certain "items in the responding party's possession, custody, or control"); FED. R. CIV. P. 45 (requiring subpoenas to, *inter alia*, "command each person to whom it is directed to . . . produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control"); FED. R. CIV. P. SUPP. R. G (governing forfeiture actions *in rem* and repeatedly using the phrase "possession, custody, or control"); N.Y. CPLR. §§ 2701(1) (authorizing a court to dispose of property where, *inter alia*, "a party has such property in his possession, custody or control as trustee for another party"), 3111 (permitting deposition subpoenas to require "the production of books, papers and other things in the possession, custody or control of the person to be examined"), 3119(a)(4)(ii) (defining "subpoena" for the purposes of interstate depositions and discovery as "a document . . . issued under authority of a court of record requiring a person to . . . produce and permit inspection and copying of designated books, documents, records, electronically stored information, or tangible things in the possession, custody or control of the person"), 3120(1)(i) (permitting the service of a notice or a subpoena *duces tecum* "to produce and permit the party seeking discovery . . . to inspect, copy, test or photograph any designated documents or any things which are in the possession, custody or control of the party or person served"), 3120(1)(ii) (permitting the service of a notice or a subpoena *duces tecum* "to permit entry upon designated land or other property in the possession, custody or control of the party or person served for the purpose of inspecting, measuring, surveying, sampling, testing, photographing or recording by motion pictures or otherwise the property or any specifically designated object or operation thereon"); *see also* N.Y. CPLR §§ 3122-a(2) (governing responses to subpoenas *duces tecum* and using the phrase "possession, custody and control"), 3122-a(4) (same), 5224(a)(4)(a-1) (same).

the lines urged by CNMI here.[30]   For example, the court in *Tomlinson v. El Paso Corp.*[31]

summarized the vast majority of federal cases as holding that Rule 34(a) of the Federal Rules of

Civil Procedure, which allows document requests to be made as to "items in the responding party's

possession, custody, or control,"[32] "enables a party seeking discovery to require production of

documents beyond the actual possession of the opposing party if such party has retained any *right*

*or ability to influence* the person in whose possession the documents lie."[33]   Additionally, a court

in this District held that documents are discoverable under Rule 34 "when that party has the right,

authority, or *practical ability* to obtain the documents from a non-party to the action."[34]   And the

Second Circuit, in discussing Rule 34(a), has stated that "a party is not obliged to produce, at the risk

of sanctions, documents that it does not possess *or cannot obtain*."[35]   The consensus meaning of the

---

[30]   *See* 7 DANIEL R. COQUILLETTE ET AL., MOORE'S FEDERAL PRACTICE § 34.14[2][b] (3d ed. 2011) ("The determination whether a party is in possession or control of documents or other materials can involve the consideration of a wide array of factors, including . . . [t]he ability of the party to the action to obtain the documents when it wants them."); 3 ROBERT L. HAIG, NEW YORK PRACTICE SERIES—COMMERCIAL LITIGATION IN NEW YORK STATE COURTS § 25:5 (3d ed. 2010) ("Documents in the possession of an agent or employee of the person from whom discovery is sought, however, are deemed to be within the control of the person from whom discovery is sought.").

[31]   245 F.R.D. 474 (D. Colo. 2007).

[32]   Fed. R. Civ. P. 34.

[33]   *Tomlinson*, 245 F.R.D. at 476–77 (emphasis added); *see id.* at 476 ("Courts have universally held that documents are deemed to be within the possession, custody or control if the party has actual possession, custody or control or has the legal right to obtain the documents on demand.").

[34]   *Bank of N.Y. v. Meridien BIAO Bank Tanz. Ltd.*, 171 F.R.D. 135, 146 (S.D.N.Y. 1997) (emphasis added); *accord In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 180 (S.D.N.Y. 2006) ("'If the producing party has the legal right or the practical ability to obtain the documents, then it is deemed to have "control," even if the documents are actually in the possession of a non-party.'" (quoting *Riddell Sports Inc. v. Brooks*, 158 F.R.D. 555, 558 (S.D.N.Y. 1994))).

[35]   *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007).

phrase "possession, custody, or control" is the same in the Rule 45 subpoena context.[36]

Courts focus on the practical aspect of "possession" and reject a narrow definition of the concept in other contexts as well.  For example, drug-possession convictions regularly are sustained absent proof of actual, physical possession provided the government proves only that a person "knowingly ha[d] the power and the intention at a given time to exercise *dominion and control* over an object, either directly or through others."[37]  The same generally is true of firearms statutes,[38] and courts in the bankruptcy context are empowered to issue orders as to property within the court's—or the parties'—constructive possession.[39]

---

[36]    *See Chevron Corp. v. Salazar*, 275 F.R.D. 437, 447 & n.8 (S.D.N.Y. 2011) ("[T]he phrase 'possession, custody or control' carries the same meaning under both Rules"); *see also Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 147 (S.D.N.Y. 2011) ("Regardless of the witness' legal relationship to a document, for the purposes of a Rule 45 subpoena, a document is within a witness's 'possession, custody, or control' if the witness has the practical ability to obtain the document.").

[37]    *United States v. Paulino*, 445 F.3d 211, 222 (2d Cir.) (some emphases and internal quotation marks omitted, some emphasis added), *cert. denied*, 549 U.S. 980 (2006); *accord People v. Muhammad*, 945 N.E.2d 1010, 1012, 16 N.Y.3d 184, 188, 920 N.Y.S.2d 760, 762 (2011) ("Knowing possession of tangible property may in the appropriate circumstances be inferred from evidence showing that the defendant had the property in his physical possession, or that he exercised 'dominion or control' over the property by a sufficient level of control over the area in which the property is found or over the person from whom the property is seized. Dominion or control is necessarily knowing, and such 'constructive possession' may qualify as knowing possession." (alterations, citations, and internal quotation marks omitted)).

[38]    *See, e.g.*, *United States v. Chavez*, 549 F.3d 119, 129 (2d Cir. 2008) ("In order to establish that a defendant possessed a firearm within the meaning of [18 U.S.C.] § 924(c), the government need not prove that he physically possessed it; proof of constructive possession is sufficient.").

[39]    *See, e.g.*, *In re J.T. Moran Fin. Corp.*, 124 B.R. 931, 938 (S.D.N.Y. 1991) ("[I]f the money or property sought to be recovered is in the actual or constructive possession of the bankruptcy court, or the debtor-in-possession, or the trustee in bankruptcy, or a third person who makes no claim to the property, or where the third person's claim is colorable only, such money or property will be subject to the summary jurisdiction of the bankruptcy court so that a proceeding to obtain a turnover of the money or property will be characterized as a core proceeding."); *see also, e.g.*, *First Nat'l Bank v. Lake*, 199 F.2d 524, 531 (4th Cir. 1952) ("As to property within its actual or constructive possession, the reorganization court may try questions of title, determine the amount and validity of liens, issue turnover orders, adjudicate petitions of reclamation, and enjoin proceedings that interfere with the

With all of that in mind, CNMI's focus on the practical ability of a garnishee to effectuate a turnover of property of a debtor has a good deal of appeal. If CIBC as a practical matter can cause its subsidiaries to comply with a turnover order, it would seem incongruous to conclude that the Court is without the power to issue such an order in the first instance.

But the argument is not as compelling as first appears. Many courts, in construing practically the phrase "possession, custody, or control," have focused specifically on the word "control"[40] and distinguished it from mere "possession."[41] In *United States v. Stein*,[42] for example, this Court rejected a party's attempt to "read the words 'custody or control' out of [Rule 16 of the Federal Rules of Criminal Procedure, which permits discovery of various materials within the government's 'possession, custody, or control,'] in flat contravention of the principle that all words

---

administration of the estate or which are directed towards the debtor's property."), *cert. denied*, 344 U.S. 914 (1953).

[40]     *See, e.g., Chevron*, 275 F.R.D. at 447 ("'Control' is construed broadly to encompass documents that the respondent has the legal right, authority, or practical ability to obtain upon demand." (alteration and internal quotation marks omitted)); *Tomlinson*, 245 F.R.D. at 477 ("The party seeking production of the documents bears the burden of proving that the opposing party has the control required under Rule 34(a)."); *New York ex rel. Boardman*, 233 F.R.D. at 268 ("The term [']control['] in the context of discovery is to be broadly construed."); *New York ex rel. Boardman v. Nat'l R.R. Passenger Corp.*, 233 F.R.D. 259, 268 (N.D.N.Y 2006) ("The critical inquiry is whether the party-litigant can exercise custody and control over the documents.").

[41]     *See Leser v. U.S. Bank Nat'l Ass'n*, No. 09 Civ. 2362, 2010 WL 1945806, at *1 (E.D.N.Y. 2010) ("[T]he Federal Rules of Civil Procedure require parties to produce items in their "possession, custody, and control," not simply those in their immediate possession."); *SEC v. Strauss*, No. 09 Civ. 4150, 2009 WL 3459204, at *7 (S.D.N.Y. 2009) ("There are two ways in which a party not in actual possession of material may have control over it under Federal Rule of Civil Procedure 34(a). First, a party has control over material that it has the practical ability to obtain. Second, a party has control over material that it has a legal right to obtain." (citations omitted)).

[42]     488 F. Supp. 2d 350 (S.D.N.Y. 2007).

in a statute, rule or contract are to be given meaning whenever possible."[43]  The Court concluded

that, where an earlier agreement, with limited exception, gave the government "the unqualified right

to demand production by [a third party] of any documents it wishes for purposes of [the] case," the

government had "control" over documents even in the immediate possession of the party.[44]

   The word "control" is entirely absent from Section 5225.  The legislative omission

of one word from statutory text, on its face, might not seem to be of enormous consequence.  But,

as so often is true, "the devil lurks precisely in such details."[45]  Among the most fundamental canons

of statutory interpretation is the rule that "[w]hen different terms are used in various parts of a

statute or rule, it is reasonable to assume that a distinction between them is intended."[46]  And that

the differing language appears in multiple separate sections of the CPLR is of no moment to the

application of that rule, as the additional canon of *in pari materia* requires that "statute or legislative

act . . . be construed as a whole, and all parts of an act are to be read and construed together to

determine the legislative intent."[47]

---

[43] *Id.* at 363; *see id.* (noting that "every circuit to have considered the question has held that 'control' under the federal rules of procedure includes the legal right to obtain the documents in question").

[44] *See id.* at 364; *cf. In re Auction Houses Antitrust Litig.*, 196 F.R.D. at 445 (concluding that a company must respond to interrogatories by "not only providing the information it has, but also the information within its control or otherwise obtainable by it," and that the latter type of information includes "information known to [a former corporate officer that] is available to [company] by virtue of [severance] agreements").

[45] *Vieth v. Jubelirer*, 541 U.S. 267, 296 (2004).

[46] *Albano v. Kirby*, 330 N.E.2d 615, 618, 36 N.Y.2d 526, 530, 369 N.Y.S.2d 655, 659 (1975).

[47] McKinney's Statutes § 97 (1971 & Supp. 2000); *accord Merkling v. Ford Motor Co.*, 251 A.D. 89, 94, 296 N.Y.S. 393 (4th Dep't 1937) ("It is a cardinal rule of construction that all parts of a statute must be read and construed together, and should, so far as possible, be harmonized with each other, and with the general intent of the lawmaking body."); *cf. Stein*, 488 F. Supp. 2d at 361 ("There is no hint in the history of [various federal] rules that the meaning of the phrase ['possession, custody, or control'] differs depending upon which rule

The Court is not convinced that it may properly treat the omission of the word "control" from Section 5225(b) as immaterial or inadvertent,[48] particularly where the subject matter of both statutes—the reach of the court's authority to order the turnover of property or documents—overlaps so fundamentally.[49]   Were the Court to read Section 5225(b) as CNMI contends it should, it effectively would amend the statute to include a meaning that is not within the actual text.[50]  As a result, the text does not support the argument CNMI asks it to bear here.

Logic supports this conclusion.  It is more than reasonable to postulate that the Legislature intended to make the standard for asset turnover higher than that for the mere disclosure of information, given the varying degrees of possessory interests involved.  Such speculation, however, is unnecessary.  We need look only to the Legislature's choices throughout the CPLR to verify that, indeed, such a scheme was its consistent choice.  By this Court's count, the Legislature employed the term "possession, custody, or control" in six different rules or sections of the CPLR.[51]

---

is in question.  To the contrary, the phrase in each case defines in identical language the extent of the obligation of a party subject to a duty to produce evidence to respond. Common sense, not to mention settled principles of construction, suggests a uniform construction.  Hence, case law under all of the relevant rules is equally instructive." (footnote omitted)).

[48]    "Control," it seems to the Court, is a much broader concept than possession or constructive possession—or custody.  *See Stein*, 488 F. Supp. 2d at 361 ("Control is the legal right, authority, or practical ability to obtain the materials sought upon demand." (alteration and internal quotation marks omitted)); *see also In re Cohen*, 300 F.3d 1097, 1102 (9th Cir. 2002) (contrasting "dominion," which is "akin to legal control," with "mere possession").

[49]    *See Ford Motor Credit Co. v. Hickey Ford Sales, Inc.*, 465 N.E.2d 330, 335, 62 N.Y.2d 291, 302, 476 N.Y.S.2d 791, 796 (1984) (reading two sections of the CPLR regarding the recovery of damages *in pari materia*); *see also In re Shtayyeh*, 424 B.R. 55, 58 (Bankr. W.D.N.Y. 2010) (reading two bankruptcy rules regarding extensions of time *in pari materia*).

[50]    *Cf. Stein*, 488 F. Supp. 2d at 363.

[51]    *See* N.Y. CPLR §§ 2701, 3111, 3119, 3120, 3122-a, 5224.

All but one of those six uses the phrase in the context of the potential disclosure of information—i.e., discovery.[52] By contrast, the phrase "possession or custody"—without reference to "control"—appears in the CPLR eleven times.[53] In each and every one, the rule or section governs or is related to the disposition of property.[54] Clearly, then, the Legislature persistently chose to set a higher standard for instances where property is at issue than for disputes involving discovery. Faced with such a clear and consistent textual difference throughout the CPLR,[55] coupled with an eminently reasonable and intuitive practical justification for it, the Court will not look the other way to avoid the conclusion that the omission of "control" in Section 5225 was deliberate and

---

[52]  *Compare* N.Y. CPLR §§ 3111 ("Production of things at the examination"), 3119 ("Uniform interstate depositions and discovery"), 3120 ("Discovery and production of documents and things for inspection, testing, copying or photographing"), 3122-a ("Certification of business records"), 5224 ("Subpoena; procedure"), *with* N.Y. CPLR § 2701 ("When court may order dispositions of property").

[53]  *See* N.Y. CPLR §§ 1320, 1321, 1325, 2701, 5222, 5225, 5232, 5250, 6214, 6215, 6219.

[54]  *See* N.Y. CPLR §§ 1320 ("Levy upon personal property by service of order"), 1321 ("Levy upon personal property by seizure"), 1325 ("Garnishee's statement"), 2701 ("When a court may order disposition of property"), 5222 ("Restraining notice"), 5225 ("Payment or delivery of property of judgment debtor"), 5232 ("Levy upon personal property"), 5250 ("Arrest of judgment debtor"), 6214 ("Levy upon personal property by service of order"), 6215 ("Levy upon personal property by seizure"), 6219 ("Garnishee's statement").

[55]  And the lone outlier in the first group—N.Y. CPLR § 2701—provides, when examined, even more support for giving import to the distinction.  That section provides a "prejudgment remedy," *Wagener v. Conant*, No. 83 Civ. 8443, 1985 WL 2735, at *2 (S.D.N.Y. Sept. 20, 1985), and authorizes a court to "order personal property capable of delivery which is the subject of the action, paid into court, or delivered to such person as it may direct, with such security as the court shall direct, and subject to its further discretion if" one of three different circumstances is present.  N.Y. CPLR § 2701.  First, though the statute does say that the court may "order personal property capable of delivery . . . delivered to" a third party, the statute appears to be used almost exclusively for "pa[yments] into court." *See, e.g.*, *Rosenblat v. Seidman*, 243 A.D.2d 699, 700, 663 N.Y.S.2d 290, 290 (2d Dep't 1997); *Rice v. DiNapoli*, 23 Misc. 3d 1128(A), 889 N.Y.S.2d 507 (Sup. Ct. Albany Cnty. 2009); .  When it is not, the delivery to a third party is done solely for the purpose of holding the property "in escrow." *Syngen Grp. Corp. v. Brookridge Funding Corp.*, 309 A.D.2d 920, 921, 766 N.Y.S.2d at 107 (2d Dep't 2003); *accord Wien & Malkin LLP v. Wichman*, 255 A.D.2d 244, 244, 680 N.Y.S.2d 250, 250 (1st Dep't 1998).  The difference, in terms of finality and consequence, between this type of "turnover" for escrow purposes envisioned by Section 2701, and Section 5225's turnover scheme, is manifest.

meaningful.

       CNMI nevertheless attempts to blur the linguistic distinction between the two phrases, contending that both require practical tests and that the words "possession or custody" therefore inevitably encompass a meaning at least similar to "control." It cites *Koehler v, Bank of Bermuda Ltd.*[56] for the proposition that "a turnover order directed at an entity subject to jurisdiction in New York can reach assets located outside the [United States], where that entity has control over the assets in question."[57] CIBC, it argues, enjoys such "control" over CFIB through its stock ownership. CNMI further cites[58] *Gucci America, Inc. v. Curveal Fashion*,[59] in replying to CIBC's argument that CNMI could not cite a single case "that permits service on a New York branch of a bank that owns a different bank in order to restrain accounts at that separate and different bank."[60] It contends that the *Gucci* court ordered disclosure of documents held by the Malaysian subsidiary of a Singapore bank "on the grounds of control," and that such a conclusion supports its entitlement to a turnover order here.[61]

       Neither of CNMI's cases is helpful to its argument. *Gucci* involved a different branch of one bank rather than a separately incorporated subsidiary—a distinction of enormous

---

[56]     12 N.Y.3d 533 (2009).

[57]     Pl.'s Reply at 3 (citing *Koehler*, 12 N.Y.3d at 540).

[58]     *See id.* at 4.

[59]     No. 09 Civ. 8458, 2010 WL 808639, at *1 (S.D.N.Y. Mar. 8, 2010).

[60]     CIBC Opp. at 2 (emphasis removed); *see id.* at 2 n.3 ("Plaintiff has not pointed to a single case under CPLR 5225(b) that holds that property in the hands of a foreign subsidiary is subject to the turnover statute.").

[61]     Pl.'s Reply at 4.

consequence here.[62]  *Koehler* is far more relevant, but likewise unavailing.

At oral argument, CNMI contended that *Koehler* "fills the missing gap despite the different language in the CPLR" because, it argued, the *Koehler* court, in analyzing Section 5225, did so "in terms of control as opposed to actual possession."[63]  But any language in *Koehler* to that effect was unnecessary to the decision.[64]  The New York Court of Appeals there answered a question certified to it by the Court of Appeals for the Second Circuit, viz. "whether a court sitting in New York may order a bank over which it has personal jurisdiction to deliver stock certificates owned by a judgment debtor (or cash equal to their value) to a judgment creditor, pursuant to CPLR article 52, when those stock certificates are located outside New York."[65]  It answered that question in the affirmative.[66]  However, the Court of Appeals did not go—indeed, could not have gone—farther than that question and the facts before it.  Neither the Court of Appeals, nor the Second Circuit after the certified question was answered,[67] ever addressed the consequence of the fact that the garnishee bank in *Koehler* had transferred the stock certificates at issue to another company during the

---

[62]     *See Gucci*, 2011 WL 6156936, at *1–*2.

[63]     Mar. 22 Tr. at 13.

[64]     *See id.* at 13–14.  The only reference in the Court of Appeals's *Koehler* opinion to "control" comes where the court "note[s] that the Legislature . . . recently amended CPLR 5224 so as to facilitate disclosure of materials that would assist judgment creditors in collecting judgments, when those materials are located outside New York." *Koehler*, 12 N.Y.3d at 539. But the court explicitly limited the significance of that section—which refers to "possession, custody, *and control*," N.Y. CPLR § 5224(a-1)—by stating that it "supports [the court's] conclusion that the Legislature intended CPLR article 52 to have extraterritorial reach." *Koehler*, 12 N.Y.3d at 539.  That amendment was, in the court's view, probative of section 5225's "extraterritorial reach" does not speak, as CNMI appears to argue it does, to the issue of whether "control" is sufficient to satisfy section 5225.

[65]     *Id.* at 536.

[66]     *See id.*

[67]     *See Koehler v. Bank of Berm. Ltd.*, 577 F.3d 497 (2d Cir. 2009).

litigation—that the assets in issue were in the actual possession of a separate, affiliated entity. Yet the question left open by the courts in *Koehler* is precisely what is at issue before this Court in this case.

The Court is not satisfied that CNMI has satisfied its burden under Section 5225(b)[68] to show that CIBC is in "possession or custody" of the Millards' CFIB Cayman Islands accounts.[69] Given the Court's legal conclusion as to the import of the omission in Section 5225 of the word "control," that the targeted accounts are housed entirely at CFIB—an entity which, however closely linked to CNMI, has not even been served in this action—effectively ends the inquiry.

That said, the Court is mindful that the issue it has decided is an unsettled question of New York law on which it is unlikely to have the last word. Moreover, although the Court need not decided the point in the present context, it notes that CNMI has made a substantial showing that under the more relaxed, "practical" standard advocated by CNMI, CNMI's evidence might be sufficient to warrant a turnover order. As discussed above, by its own public statements, CIBC enjoys "full oversight of the risk and control framework of all [of CFIB's] operations."[70] It touts

---

[68]    *See Irving & William H. Stark, Inc. v. Milberg Factors, Inc.*, 38 A.D.2d 526, 526, 326 N.Y.S.2d 867, 868 (1st Dep't 1971).

[69]    The Court finds further support for its conclusion in federal case law. The Supreme Court has stated that "[a] corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary; and, it follows with even greater force, the parent does not own or have legal title to the subsidiaries of the subsidiary." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003). The Second Circuit adheres to that view, having concluded that even where a foreign government has a "manifested . . . ability and willingness to control" its own central bank—and even "to use [the bank's] assets"—such arrangement "did not cause control of [the bank's] assets to change from [the bank] to the [government]." *EM Ltd. v. Republic of Arg.*, 473 F.3d 463, 475 (2d Cir.), *cert. denied*, 552 U.S. 818 (2007); *see EM Ltd.*, 473 F.3d at 476 (concluding that "[c]orporate law principles, which apply by analogy to the relationship between [a government] and its instrumentality [bank], support this conclusion" (citations omitted)).

[70]    Mar. 5 Kim Decl. Ex. 84 at 13.

also its "commit[ment] to make available to the [Federal Reserve] Board . . . information on the operations of [CIBC] and any of its affiliates" to comply with federal law.[71]  It requires CFIB to comply with U.S. legal requirements such as Sarbanes-Oxley and the PATRIOT Act.[72]  And CIBC and CFIB have significant personnel overlaps, even at senior levels of management[73]—though, to be sure, the extent of those overlaps is disputed by CIBC.[74]  While the import of all of those evidentiary matters are in dispute, the Court considers that they, at the very least, suggest that it is within CIBC's practical power to, somehow, access and turn over the account funds in question here.[75]

---

[71]    *See id.* Ex. 70 at 4.

[72]    *See id.* Ex. 83.

[73]    *See id.* ¶¶ 83, 90.

[74]    *See* CIBC Opp. at 5; Aylett Decl. ¶ 5.

[75]    CIBC's arguments that such control is absent—made mostly in response to CNMI's discovery requests—are not convincing.  The bank flatly declares that the parent and subsidiary banks "do not have an information sharing agreement, and CIBC is unable to access accounts or account information held by [CFIB] or its subsidiaries." CIBC Opp. at 5; *see* Aylett Decl. ¶ 8.  But as the Court suggested at oral argument, *see* Mar. 22 Tr. at 33–34, such statements are obfuscating.  Through its stock ownership, CIBC has the ability to, in indefinite succession, replace the directors and officers of FCIB until such employees effectuate the parent company's directions.  That ability renders debates about CIBC's "control" here somewhat academic.

And CIBC's reliance on the Cayman Islands's bank-secrecy laws as obstacles to establishing the parent bank's "control" over its subsidiary, *see* Aylett Decl. ¶¶ 8–9; Hatfield Decl. ¶¶ 18–20, are largely, in the Court's view, misplaced, for several reasons. First, it is hardly uncommon that a large corporation, by doing business in many jurisdictions, subjects itself to potentially conflicting laws. *See, e.g., In re Grand Jury Proceedings Bank of Nova Scotia*, 740 F.2d 817, 827–29, 828 (11th Cir. 1984) ("The Bank and the *amici* argue that it is unfair to require the Bank to be put in the position of having to choose between the conflicting commands of foreign sovereigns.  Yet such occasions will arise and a bank indeed will have to choose."), *cert. denied*, 469 U.S. 1106; *In re Vitamin C Antitrust Litig.*, 584 F. Supp. 2d 546, 551 (E.D.N.Y. 2008) (discussing the "foreign sovereign compulsion doctrine," which "recognizes that a defendant trying to do business under conflicting legal regimes may be caught between the proverbial rock and a hard place where compliance with one country's laws results in violation of another's").

It follows, then, that if a finding that "CIBC has the control, power, authority and practical ability to order [CFIB] to turn over funds on deposit in the name of the Millards and entities controlled by the Millards pursuant to an order from this Court"[76] were sufficient as a matter of law under Section 5225, an evidentiary hearing delving further into the merits of these and additional bits of evidence could be appropriate.

*Injunction Pending Appeal*

This Court previously issued a restraining order as to CBIC and the Millard accounts at issue. Because of the paucity of state-law decisions interpreting the precise meaning of "possession or custody" under Section 5225(b), compounded with the risk that the Millards' knowledge of these turnover actions might already be jeopardizing CNMI's ability to secure funds in satisfaction of its tax judgments, the Court finds it appropriate to leave that restraint in place, under Federal Rule of Appellate Procedure 8, pending CNMI's appeal to the Second Circuit[77] and,

---

More importantly, however, as this Court has previously explained, "the modern trend holds that the mere existence of foreign blocking statutes does not prevent a U.S. court from ordering discovery[,] although it may be more important to the question of sanctions in the event that a discovery order is disobeyed by reason of a blocking statute." *In re Auction Houses Antitrust Litig.*, 196 F.R.D. at 446 (citing 1 RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 442 (1987); Lewis A. Kaplan, *International Discovery in Antitrust Litigation* § 15.07 in 2 ANTITRUST COUNSELING AND LITIGATION TECHNIQUES (J.O. von Kalinowski ed. 1996)); *see Bank of Nova Scotia*, 740 F.2d at 828–29 (affirming a district court's imposition of sanctions on a bank for failure to comply with subpoenas over the bank's objections regarding banking-secrecy laws); *see also In re Auction Houses Antitrust Litig.*, 196 F.R.D. at 446 ("In determining whether to enter an order compelling discovery, courts typically consider, among other factors, the national interests of the nations involved, the nature and extent of the hardship that would be imposed upon the discovery target if the two countries took inconsistent positions, the good faith or lack thereof of the party resisting the order, and whether a discovery order reasonably can be expected to achieve compliance.").

[76]    Pl.'s Br. at 13.

[77]    The Court and the parties contemplated the consequences of a potential appeal at the end of oral argument. *See* Mar. 22 Tr. at 38–39, 43–46.

if that Court were to deem it appropriate, certification of this interesting question to the New York Court of Appeals for an authoritative determination of state law.[78]  Despite its denial of CNMI's motion, the Court considers CNMI's argument to have sufficient force amidst admittedly murky concepts to eventually have a fair chance of success on the merits.  It further finds that CNMI's interests face irreparable injury should the restraint dissolve, that continuing the restraint will not harm the interests of the CBIC in any way, and that the public interest lies in preventing the further dissolution or movement of assets in avoidance of a registered tax judgment.[79]  Accordingly, an appropriate injunction pending appeal will issue.

*Discovery*

Finally, the Court notes that CNMI has moved for an order compelling additional discovery regarding the Millards' associated accounts in the CBIC subsidiary banks.[80]  As the Court has denied the motion for a turnover order, these and any other discovery issues pending between CNMI and CIBC are now moot.

---

[78]   *See* 2D CIR. LOCAL R. 27.2(a) ("If state law permits, the court may certify a question of state law to that state's highest court.").

[79]   *See In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) ("The four factors to be considered in issuing a stay pending appeal are well known: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." (footnote and internal quotation marks omitted)).

[80]   *See* DI 76; *see also* Pl.'s Br. at 20–22.

22

*Conclusion*

For the foregoing reasons, the plaintiff's motion for a turnover order and preliminary injunction against the defendant [Sealed DI] is denied, as is the plaintiff's motion to compel disclosure [DI 76], the latter on the ground of mootness and without prejudice to renewal should circumstances warrant. The restraining order previously entered is continued in force pending the filing and disposition of any appeal from this order.

SO ORDERED.

Dated:        April 3, 2012

_____
Lewis A. Kaplan
United States District Judge