UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
COMMONWEALTH OF THE                             :
NORTHERN MARIANA ISLANDS,                       :
                                                :
                    Plaintiff,                  :
                                                :
-against-                                       :  Civil Action No. 1:11-MC-00099
                                                :
WILLIAM H. MILLARD,                             :
                                                :
                    Defendant.                  :
----------------------------------------------------------X  **DECLARATION**
COMMONWEALTH OF THE                             :
NORTHERN MARIANA ISLANDS,                       :
                                                :
                    Plaintiff,                  :  Civil Action No. 1:11-MC-00100
                                                :
-against-                                       :
                                                :
PATRICIA H. MILLARD,                            :
                                                :
                    Defendant.                  :
----------------------------------------------------------X

**DECLARATION IN RESPONSE TO MOTION TO
COMPEL AND IN SUPORT OF CROSS-MOTION TO
TRANSFER VENUE AND GRANT PROTECTIVE ORDER**

TERRY M. GILES, an attorney duly admitted to practice law before the Courts of the State of California, declares the following to be true under penalties of perjury pursuant to 28 U.S.C. § 1746:

1.  I am an attorney admitted to practice law in the State of California since 1974. I am a Member of The Association of Trial Lawyers of America. I have been admitted to practice in federal and state courts across the United States and have never been refused admittance nor disciplined by any of those courts. My professional offices are located at 11002 Wickwood Drive, Houston, Texas 77024. My background, credentials and not-for-profit board service are set forth in my prior Declaration filed November 4, 2011 as Document 23 on the Court's Docket under Case 1:11-mc-

00100-P1 captioned above. In its prior orders, this Court has treated these cases under one consolidated caption.

2. This Declaration is submitted for two purposes: (1) to respond to Plaintiff's motion to compel and (2) to support of my cross-motion to transfer venue under 28 U.S.C. § 1404 and to support my request for a protective order under Rule 26 of the Federal Rules of Civil Procedure.

3. On the present motion to compel, the Plaintiff seeks from me additional post-judgment, non-party discovery. As detailed below, I have already provided multiple sworn Declarations on discovery and I have produced about 1300 Bates-stamped documents under a <u>Confidentiality Stipulation and Order</u> executed by Judge Preska on December 28, 2011[1].

4. But something more important and relevant has occurred that changes everything. Directly stated, William Millard and Patricia Millard, the Defendants and Debtors in these proceedings, have brought direct legal action against the Commonwealth of the Northern Mariana Islands ("CNMI") in the United States District Court for the Middle District of Florida, Orlando Division.[2] A copy of the Complaint in that action, electronically filed on August 13, 2012, is annexed here as Exhibit "A." I respectfully refer the Court to the vital factual background set forth in that Complaint. As I have consistently detailed in prior Declarations, the foreign judgments relied upon by CNMI were fraudulent, jurisdictionally defective, entered *in absentia* and based on an unconstitutional local Saipanese "Island" tax law in direct contravention of United States tax laws codified in the Internal Revenue Code.[3]

---

[1] See ECF Document No. 48 filed in Case No. 1:11-mc-00099.
[2] Captioned as <u>Millard v. Commonwealth of the Northern Mariana Islands</u>, identified by Case No.6:11-CV-1927-ORL-22-KRS.
[3] I have previously provided detailed Affidavits with multiple exhibits detailing the history of these foreign judgments See, e.g., Declaration filed November 22, 2011 as Document 30 (with Exhibits attached) under Case No. 1:11-mc-00100-LAK (130 page submission) and Declaration filed November 4, 2011 as Document 23 (with Exhibits attached) under Case No. 1:11-mc-00100-LAK.

2

5. A copy of the current Docket Report in the Florida federal proceeding is annexed as Exhibit "B." As indicated in the Complaint, the Millards seek to vacate the default judgments entered in 1994 by the United States District Court for the District of the Northern Mariana Islands. As attested in the Complaint, the judgments are improper and objectionable on jurisdictional, constitutional and statutory grounds. Finally and for the first time, the Florida Federal District Court will now have the opportunity to pass on the merits of the case with all parties in interest before it. Even now, the legal team for the Millards has just filed their motion for summary judgment in the Florida proceedings to set aside and vacate these default judgments which remained virtually hidden for some 17 years.

6. I will detail in this Declaration my prior efforts to comply in good faith with the Plaintiff's prior discovery requests. I have cooperated with CNMI counsel from the inception. On page 2 of its Memorandum of Law in support of its motion to compel, CNMI counsel states that "*After the Court entered a Confidentiality Stipulation and Order (see ECF No. 48 in Case No. 1:11-mc-00099), Giles produced some documents and gave his responses to interrogatories.*" That is a striking and misleading statement. The Plaintiff's motion to compel omits the fact that I have provided multiple discovery responses and about 1300 documents directly and hundreds more through my banks. I have even offered to fly to New York and sit for a deposition. At this juncture, the Federal Courts in Florida and New York are no longer addressing strictly post-judgment enforcement proceedings. An action in chief is now pending that challenges the very judgments on which the instant motion to compel relies. My point on this cross-motion is to bring all discovery and related proceedings before the same court and the same Judge at the same time. That makes both judicial and common sense and is supported by the law on transferring venue.

7. I live in the State of Texas. I have no office, residence or other contacts with the State of New York. Nonetheless, I have made every effort to respond to all the subpoenas and discovery requests served by CNMI counsel to date. I was before the New York Federal Court previously because CNMI first registered the foreign judgments in New York. Since the initial filings in August of 2011, CNMI filed further proceedings in a Florida District Court (Middle District of Florida, Orlando Division) because that is where the Millards and their family are contesting these foreign judgments. The same attorneys appearing here for CNMI (Kobre & Kim, LLP) have also appeared in the ongoing Florida proceedings. Respectfully, the time has come to eliminate the fragmented treatment of this matter.

8. I now serve on the defense team representing the Millards in the Florida Federal Court proceeding. I have been hired by the attorneys representing the Millard family to advise and give legal advice as of June 2012. As I have detailed in prior Declarations, I worked with the Millards during their residency on the island of Saipan, the capital and chief Island in the Northern Mariana Island chain. I do not represent William and Patricia Millard directly. I have signed a joint defense agreement to secure the confidentiality and propriety of communications among all the attorneys. Moreover, I am in constant contact with the attorneys representing William and Patricia Millard and many of my e-mail conversations with counsel are copied to the clients.

9. I appeared before this Court in Manhattan on December 5, 2011 on a motion returnable before Chief Judge Loretta Preska. Judge Preska is one of several New York Judges who have fielded post-judgment special proceedings in this matter. As explained in the April 3, 2012 <u>Memorandum Opinion</u> of Hon. Lewis A. Kaplan, *"to this point, eight different judges in this District – sitting in Part 1 – have presided over these related matters."*[4] Before my December 2011

---

[4] See page 3 of <u>Memorandum Opinion</u> dated April 3, 2012 filed as Document No. 97 on April 12, 2012 under Case 1:11-mc-00099-LAK.

appearance, I had moved this Court for a protective order based on bank subpoenas served by the CNMI attorneys against my Texas bank accounts. I wanted the Court to limit or modify overbroad discovery or at least direct a confidentiality agreement. The subpoenas effectively reached all my attorney-client and trust accounts which had no connection to the Millards or their family members.

10. From the inception, Judge Preska took a decidedly practical approach; she resolved all motions by directing counsel to work out a Stipulation of Confidentiality to address my privacy concerns. I did so through my legal counsel. That <u>Confidentiality Stipulation and Order</u> was then signed by Judge Preska on December 28, 2011 (Document No. 48 in Case No. 1:11-mc-00099). Thus, my motions under Rule 26 were addressed and rendered moot because of the protections in place. Thereafter, I produced 1296 numbered documents marked "Giles Highly Confidential" by <u>Response to Document Production Requests</u> dated December 28, 2011. In addition, I gave my banks authorization to produce hundreds of additional documents to CNMI counsel after Judge Preska so ordered the <u>Confidentiality Stipulation and Order</u>.

11. I likewise provided <u>Answers to Interrogatories</u> dated December 27, 2011 in which I addressed questions about 33 different companies identified by CNMI counsel and I explained my prior representation of the Millards during the 1980's. I further explained my relationship with the Millard family and answered virtually every question directed to me.

12. CNMI later posed additional questions to me to which I responded in detail in my <u>Answers to Interrogatories</u> dated March 21, 2012. All of my responses were designated as "Giles Highly Confidential" consistent with the requirements of the <u>Confidentiality Stipulation and Order</u> so ordered by Judge Preska.

13. Counsel for CNMI then served a third wave of discovery demands to which I responded by Answers through my counsel dated June 8, 2012. I not only responded to requests for

bank check information, I provided copies of (1) all transaction detail for William Millard's use of an American Express card account in December of 2009 and January of 2010; (2) all checks made payable to American Express by William Millard to pay balances due in 2010; (3) all American Express transaction details relative to William Millard in 2010; (4) copies of all Millard checks payable to American Express in 2012; and (5) a copy of an unrelated check (requested by CNMI) for client reimbursement. My cooperation extends beyond the inaccurate characterization that "*Giles produced some documents and gave his responses to interrogatories.*" Copies of some of my responses are attached as Exhibits to CNMI's motion papers. But my extensive document production has not been referenced or explained.

14. I have therefore moved beyond good faith cooperation to provide full disclosure on the information requested by CNMI counsel. It is noteworthy that CNMI had already subpoenaed and received all the American Express information which they requested from me.

## THE INFORMATION NOW REQUESTED BY CNMI

15. On this present motion to compel, CNMI seeks five additional types of information:

    (1) Disclosure of my e-mail providers and accounts over the past two years;

    (2) A detailed accounting of the steps taken to preserve, collect and produce e-mail communications;

    (3) Consent to the discovery and disclosure to CNMI of any communications authored, sent, received, copied or blind copied to specific, enumerated e-mail addresses;

    (4) Disclosure of consideration paid or promised in connection with work on behalf of the defendant judgment debtors (the Millards), and all correspondence related to

"consultation or retention of Giles, by or on behalf of the defendant judgment debtors, their family members, or attorneys or representatives of any of them, during the last two (2) years"[5]; and

(5) The identity of a client who sent reimbursement to my office via Check No. 1148, payable to American Express, dated February 5, 2010 in the amount of $9,506.23 and drawn on Banque Julius Baer & Cie SA Geneva through account number 0011799574 at J.P. Morgan Chase Bank, N.A.

16. I can respond to each of these requests here and now. In fact, these requests could have been worked out between counsel.

### First Request

### E-Mail Addresses Used During the Past Two Years

17. As to my e-mail providers and accounts over the past two years, I have used only the e-mail address of tg@oteam.com. That account was set up by a company I work for. I pay a monthly fee and continue to use it. I do not have control over the server nor do I interact with whoever maintains the system. I use that e-mail address for all my correspondence with the Millards' defense team. I also use that e-mail address for my own attorney-client and confidential communications.

### Second Request

### Steps Taken to Collect and Produce E-Mail Communications

18. As to steps taken to preserve, collect and produce my e-mail communications, attached to CNMI's motion to compel as Exhibit "1" are copies of Bates-stamped documents numbered 1266 to 1296 which I provided. I systematically went through my files and pulled all correspondence responsive to CNMI's requests. I served these documents with my Response to Document Production Requests dated December 28, 2011. I served a total of 1296 numbered documents. That figure does not include hundreds of additional documents provided directly by my banks at my direction. I have

---

[5] The branches of relief requested by CNMI on the instant motion to compel are spelled out in the proposed Order accompanying the motion.

confirmed that I have no other e-mail correspondence except those provided. Although I was not asked by the CNMI previously for dates and e-mail addresses regarding those e-mails, I believe I can provide copies of these same documents with dates and e-mail address information if that is in fact what the CNMI is after. Nonetheless, I believe that CNMI may have already secured these same documents from the recipients via their own e-mail addresses which were subpoenaed in Florida Federal Court.

### Third Request

#### Consent to Secure Communications Authored, Sent, Received, Copied or Blind Copied To Specific, Enumerated E-Mail Addresses

19. The e-mail correspondence I have produced is all that I possess as to the e-mail addresses referenced and enumerated by CNMI. I have made a diligent search and I could not find or locate any additional responsive correspondence. I will not provide my consent for access to the e-mail address of tg@oteam.com. As stated above, that e-mail address is used for all my confidential and attorney-client privileged communications. I communicate regularly with the Defendants' legal counsel and many of my communications are forwarded or copied to the Defendants themselves. I have already produced everything I have related to the Millards and their family which pre-dates the commencement of these proceedings.

### Fourth Request

**Disclosure of consideration paid or promised in connection with work on behalf of the defendant judgment debtors (the Millards), and all correspondence related to "consultation or retention of Giles, by or on behalf of the defendant judgment debtors, their family members, or attorneys or representatives of any of them, during the last two (2) years"**

20. I have neither received nor have I been promised consideration on behalf of or from the judgment debtors or any of their family members. Moreover, I have absolutely not been retained

by the Millards or any of their family members. I have been retained by the attorneys comprising their litigation team as a legal advisor because of my involvement in the CNMI matter in the 1980's. Those events are detailed in the Complaint filed by the Millards. I have also detailed my involvement in my prior Declarations filed with this Court. *See* Declaration filed November 22, 2011 as Document 30 (with Exhibits attached) under Case No. 1:11-mc-00100-LAK (130 page submission) and Declaration filed November 4, 2011 as Document 23 (with Exhibits attached) under Case No. 1:11-mc-00100-LAK. I am strictly involved on a *pro bono* basis. I am serving without compensation because I want to see justice done.

21. I have recounted the history of these judgments before. They were entered through default. No real or good faith effort was made to locate the Millards before entry of judgment in 1994. The Millards had attorneys right in Saipan at the time the judgments were entered. Most important, the Federal District Court in Saipan had no jurisdiction over the Saipanese tax law in question. That law was enacted to specifically target the Millard family. I have worked directly with the United States Internal Revenue Service on the Millard family tax issues. As I have stated in the past, the Internal Revenue Service has confirmed that no tax liabilities remain outstanding as to William and Patricia Millard. I feel confident that the Florida Federal District Court will vacate and set aside these judgments now that a direct action is pending.

22. In light of the above, I therefore have no correspondence related to "consultation or retention by Giles, by or on behalf of the defendant judgment debtors, their family members, or attorney or representatives of any of them, during the last two (2) years." As an advisor to the legal team representing the Millards, I am privy to attorney client communications and litigation strategies. That information is obviously beyond the scope of the CNMI request and is not otherwise discoverable.

## FIFTH REQUEST

## CLIENT REIMBURSEMENT CHECK
## PAYABLE TO AMERICAN EXPRESS

23.     As I have described previously, because the Millards are not USA citizens and because I have had a long standing friendship with them, in 2007 I allowed them to have a card relative to my American Express account (a non-USA citizen cannot have an American Express card directly.) They used the card sparingly and always reimbursed me immediately when they did. Plaintiff's counsel has received copies of my American Express card showing when the Millards used the account and when they repaid me. On the card there was one payment made that was from a client who is a non-US citizen who reimbursed me for travel from a Swiss account. This client is unrelated to the Millards in any way. I have made disclosure with respect to the client reimbursement check received by my office and forwarded to American Express to pay that portion of the bill and CNMI now seeks further discovery. Specifically, I produced to CNMI attorneys a copy of Check No. 1148, payable to American Express, dated February 5, 2010 in the amount of $9,506.23 and drawn on Banque Julius Baer & Cie SA Geneva through account number 0011799574 at J.P. Morgan Chase Bank, N.A. (see Exhibit 2 annexed to CNMI's motion to compel). As I have stated in my prior responses, the foregoing check was received by my assistant and was included with my office's payments to American Express. Other than the fact I received the check from this unrelated client to reimburse me for travel expenses, I have no information regarding the account at Banque Julius Baer & Cie SA Geneva. I do not know the contact persons or the signatories on that account nor do I have control over that account. My client in that matter is completely unrelated to the Millards or their family or the Millard Foundation and how this unrelated client handles their banking is not my responsibility and I have no knowledge thereof. Plaintiff already has copies of all my American Express records. Sometimes my businesses and clients

10

reimburse me directly for travel related expenses. This is one of those cases and this is not my bank account. As I have said, I have no information whatsoever about it other than my client (again unrelated to the Millards in any way) used it to reimburse me for travel expenses. Additionally, I have provided to Plaintiff evidence which demonstrates that all charges made on my card by the Millards were fully reimbursed by the Millards directly. It is very clear that the check in question is related to another client and is in no way related to the Millard charges. The Plaintiff continues to ask me for more information about an account I have no control over and have no information about. Additionally, they have demanded the name of this unrelated client which I have refused to give them because I do not want this unrelated client's name to be dragged into a matter which is irrelevant to the Plaintiff's matter. More importantly, however, I have the duty to protect and preserve attorney-client confidences. I have made full disclosure on this twice; I have produced an actual copy of the check provided; and I have stated under oath that this client has absolutely nothing to do with the Millards. No attorney can allow a third party to peruse through client information.

24. The attorney-client privilege is the "oldest of the privileges for confidential communications known to the common law." Upjohn Co. v. U.S., 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) (internal citation omitted). Its purpose is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Id. Here, I respectfully submit that CNMI has pushed the envelope too far. Initially, they have downplayed before the Court the full scope of my good faith cooperation and the personal time and expenses I have incurred. I am duty-bound now to protect client confidences, including identity where the client is irrelevant to the matter before the Court, and the discovery sought is clearly a fishing expedition. I am a non-party and a resident of Texas. For these reasons, I have cross-moved the Court for the barest Rule 26 protective order to halt

intrusions into irrelevant and privileged matters.

## CROSS-MOTION TO TRANSFER VENUE

25. As stated above, a plenary action on the merits is now pending in the United States District Court for the Middle District of Florida, Orlando Division. The Complaint filed in that action is annexed as Exhibit "A" and the most recent Docket Report of the case is annexed as Exhibit "B." After more than a year of fragmented treatment, this matter will now be addressed on the merits in one forum with all parties present. As Judge Kaplan has noted, at least 8 separate New York Judges have addresses piecemeal enforcement proceedings.

26. When I appeared before Chief Judge Loretta Preska in December of 2011, she rightly noted that the Millards (the debtors) were not in court contesting the judgment against them. In fact, that is now the case in the Florida Federal District Court.

27. As an attorney, I have reviewed the settled law on transferring venue. The legal discussion is set forth at length in the Memorandum of Law supporting this cross-application. It is well settled that transfer of venue is governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *See also Delta Air Lines v. Ass'n of Flight Attendants*, 720 F.Supp.2d 213, 217 (E.D.N.Y.2010). "[M]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." *See In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir.1992); *see also Red Bull Assocs. v. Best Western Int'l, Inc.*, 862 F.2d 963, 967 (2d Cir.1988); *Solar v. Annetts*, 707 F.Supp.2d 437, 441 (S.D.N.Y.2010).

28. On a motion under § 1404, the moving party "bears the burden of establishing the propriety of transfer by clear and convincing evidence." *Ahmed v. T.J. Maxx Corp.*, 777 F.Supp.2d

445, 449 (E.D.N.Y.2011) (citing *New York Marine and Gen. Ins. Co. v. Lafarge N.A., Inc.*, 599 F.3d 102, 114 (2d Cir.2010)). That party "must demonstrate that ... the transferee court is able to exercise jurisdiction over the parties and must be an appropriate venue of the action[ ] and ... [that] the balance of convenience and justice favors transfer." *Jones v. City of New York*, No. 11–cv–5042 (CBA), 2012 WL 716890, at *1 (E.D.N.Y. March 5, 2012) (quotations omitted).

29. In general, courts consider the following factors, among others, in determining whether the balance of convenience and the interests of justice favor transfer: (1) plaintiff's choice of forum; (2) the convenience of witnesses; (3) the location of relevant documents and other physical evidence; (4) the convenience of parties; (5) the locus of operative facts; (6) the availability of process to compel the attendance of unwilling witnesses; (7) the relative means of the parties; (8) the forum's familiarity with governing law; and (9) judicial economy and the interests of justice. *See Delta*, 720 F.Supp.2d at 217; *see also D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106–07 (2d Cir.2006); *Ahmed*, 777 F.Supp.2d at 449.

30. Here, I respectfully submit that transfer of venue is appropriate. First, the Florida action is not imminent or hypothetical, it is already pending. CNMI chose to file these foreign judgments in a Florida federal court. Moreover, in the plenary action seeking to vacate these judgments, the Millard family has agreed with Florida venue because of the family's longstanding ties to the state. . It is well known that the Millard family has maintained a presence in Florida for years. Second, the Kobre & Kim firm (appearing here) has already appeared in the Florida action. Third, the chief and central issue, i.e., the enforceability of these judgments will be litigated and ultimately resolved in Florida.

31. Fourth, in terms of convenience, I live in Texas. Texas is closer to Florida than to New York. Moreover, the Millards have retained Florida attorneys to represent their interests. And

the Florida litigation already has a significant history and a judge assigned. I therefore submit that the transfer of this proceeding to Florida (where the action is ongoing) is appropriate and proper. Frankly, I should not be forced to respond to New York proceedings when the case is pending in Florida. I request therefore that this Court direct that all current and future proceedings be transferred to the Florida Federal Court so that all issues can be addressed by the same Court and the same Judge at the same time.

## CROSS-MOTION FOR PROTECTIVE ORDER

32.   Related to my transfer of venue application is my request for a protective order under Rule 26. As explained above, the Court's protection is particularly important to preserve client privacy issues.

33.   Here again, the law is set forth at length in the supporting Memorandum of Law. Generally, the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed. R. Civ. P. 26 (c)(1). "The rule serves in part to protect parties' privacy interests." *Duling v. Gristede's Operating Corp.* 266 F.R.D. 66, 71 (S.D.N.Y. 2010) (*citing* Seattle Times Co. v. Rhinehart, 467 U.S. 20, 35 n.1 (1984)) (additional citation omitted), and "allows for the crafting of appropriate relief," including prohibiting the disclosure or discovery altogether. *Duling*, 266 F.R.D. at 71 (citation omitted); *see* Rule 26(c)(1)(A). "Under Rule 26(c), the trial court has 'broad discretion...to decide when a protective order is appropriate and what degree of protection is required.'" *Duling*, 266 F.R.D. at 72 (*quoting* Seattle Times, 467 U.S. at 36 (additional citation omitted); *see also Dove v. Atlantic Capital Corp.*, 96 F.2d 15, 19 (2d Cir. 1992) ("the grant and nature of protection is singularly within the discretion of the district court....").

34. Even though a plenary action is pending is Florida, CNMI has brought a motion to compel in New York as to a non-party who resides in the State of Texas. CNMI did so even after the Florida action was filed. I have detailed above my attempts at cooperation. I have done more than provide "some" documents. I ask the Court for a protective order in conjunction with transferring this case to the Florida Federal District Court to avoid further litigation or expense in connection with the New York District Courts. I do not reside or own property in New York. I have no bank accounts in New York and I do not practice law in New York. I am, however, involved as an advisor to the litigation team with respect to the Florida federal litigation. CNMI's counsel, Kobre & Kim, has appeared and is litigating in the Florida federal action.

35. I therefore ask that all further discovery or related issues be venued in the Florida federal court and not in New York. I believe this Court has full authority to render an Order under Rule 26 to avoid "oppression or undue burden or expense" which includes "prohibiting the disclosure or discovery altogether." I thus ask that the Court do so in order to ensure that all further and related matters are addressed by the United States District Court for the Middle District of Florida.

36. All of the foregoing is respectfully submitted.

Dated: Houston, Texas
September 21, 2012

_____
TERRY M. GILES