UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
COMMONWEALTH OF THE
NORTHERN MARIANA ISLANDS,

        Plaintiff,

-against-                                  Civil Action No. 1:11-MC-00099

WILLIAM H. MILLARD,

        Defendant.
------------------------------------------------------------X    **MEMORANDUM OF LAW**
COMMONWEALTH OF THE
NORTHERN MARIANA ISLANDS,

        Plaintiff,                      Civil Action No. 1:11-MC-00100

-against-

PATRICIA H. MILLARD,

        Defendant.
------------------------------------------------------------X

_____

**MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFF'S
MOTION TO COMPEL DISCOVERY FROM A NON-PARTY
WITNESS AND IN SUPPORT OF CROSS-MOTION TO TRANSFER
VENUE AND GRANT A RULE 26 PROTECTIVE ORDER**

_____

**TARSHIS, CATANIA, LIBERTH
MAHON & MILLIGRAM, PLLC**
*Attorneys for Non-Party*
**TERRY M. GILES**
One Corwin Court, P.O. Box 1479
Newburgh, New York 12550
Tel. No. 845-565-1100

Of Counsel:

Richard M. Mahon, II, Esq.

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ii-iii

**PRELIMINARY STATEMENT** ...........................................................................................1

**POINT I**

**TERRY GILES HAS SUPPLIED RESPONSES TO ALL
THE REQUESTS POSED; THE REQUESTED E-MAIL SERVER
INFORMATION HAS ALREADY BEEN PROVIDED IN HARD
COPIES AND IS OTHERWISE PRIVILEGED AND PROTECTED** ...................................5

**POINT I**

**TRANSFER OF VENUE IS APPROPRIATE HERE BECAUSE
A PLENARY ACTION IS ONGOING IN FLORIDA FEDERAL
COURT WHICH CHALLENGES THE EFFICACY OF THE
UNDERLYING JUDGMENTS AND PLAINTIFF'S COUNSEL
HAS APPEARED AND IS LITIGATING IN THAT ACTION**................................................8

**POINT III**

**A RULE 26(c) PROTECTIVE ORDER IS
APPROPRIATE IN THESE CIRCUMSTANCES**.................................................................9

**CONCLUSION** ...................................................................................................................10

## PRELIMINARY STATEMENT

Terry M. Giles is a non-party attorney who resides and maintains his professional offices in Houston, Texas. He has no offices, residences or contacts in the State of New York. More than 20 years ago he represented William H. Millard and Patricia H. Millard, the defendants named in this matter. Mr. Giles' Declaration is submitted here in response to the Plaintiff's motion to compel and in support of his cross-motion seeking transfer of this matter to the Florida United States District Court where it belongs.

In 1994, the Plaintiff entered default judgments against the Defendants based on alleged tax liabilities arising under a local tax law passed by the Commonwealth of the Northern Mariana Islands (hereafter "CNMI"). The attorneys for CNMI are Kobre & Kim, LLP. That firm registered the foreign default judgments in both the New York and Florida federal courts.

The New York courts have seen multiple judges assigned to this matter on piecemeal enforcement proceedings. As explained in the April 3, 2012 Memorandum Opinion of Hon. Lewis A. Kaplan, "*to this point, eight different judges in this District – sitting in Part 1 – have presided over these related matters.*"[1]

On August 13, 2012, William Millard and Patricia Millard commenced a plenary action in the United States District Court for the Middle District of Florida, Orlando Division. A copy of the Complaint filed in that action is annexed to the Giles Declaration as Exhibit "A." A copy of the current Docket Report for that case (through September 21, 2012) is annexed to the Giles Declaration as Exhibit "B." The firm of Kobre & Kim LLP has also appeared for CNMI in the Florida litigation.

This Memorandum of Law is submitted for two purposes: (1) to respond to Plaintiff's motion to compel and (2) to support the Giles cross-motion to (a) transfer venue under 28 U.S.C. § 1404 and (b) grant a protective order under Rule 26 of the Federal Rules of Civil Procedure.

---

[1] See page 3 of Memorandum Opinion dated April 3, 2012 filed as Document No. 97 on April 12, 2012 under Case 1:11-mc-00099-LAK.

Terry M. Giles has already produced to CNMI approximately 1300 documents; he has produced hundreds more indirectly through his banks. Moreover, he has answered multiple waves of interrogatory requests and has even offered to fly to New York for a deposition.

Respectfully, the time has come to transfer all relevant proceedings to the same judge and the same federal court at the same time.

It is undisputed that the Kobre & Kim firm has already appeared in the ongoing Florida federal court action. The Docket Report lists them as the attorneys for the Commonwealth of the Northern Mariana Islands. The parties are the same and the common nucleus of operative facts is the same.

As set forth in his Declaration, Mr. Giles has been engaged as an advisor to the legal team representing William Millard and Patricia Millard. The extended Millard family has resided in Florida for years and William and Patricia Millard have now chosen Florida federal court venue to challenge and ultimately set aside these errant judgments. As stated in the Giles Declaration, a motion for summary judgment has already been filed on the merits in the Florida action. We believe that motion will result in these improper judgments being set aside.

On the present motion to compel, the Plaintiff seeks from Mr. Giles additional post-judgment, non-party discovery. As detailed in his Declaration, Mr. Giles has already provided multiple sworn Declarations[2] on discovery and 1296 Bates-stamped documents under a <u>Confidentiality Stipulation and Order</u> executed by Judge Preska on December 28, 2011[3].

Mr. Giles has cooperated with CNMI counsel from the inception. On page 2 of its Memorandum of Law in support of its motion to compel, CNMI counsel states that "*After the Court entered a Confidentiality Stipulation and Order (see ECF No. 48 in Case No. 1:11-mc-00099), Giles produced*

---

[2] See, e.g., Declaration filed November 22, 2011 as Document 30 (with Exhibits attached) under Case No. 1:11-mc-00100-LAK (130 page submission) and Declaration filed November 4, 2011 as Document 23 (with Exhibits attached) under Case No. 1:11-mc-00100-LAK.

[3] See ECF Document No. 48 filed in Case No. 1:11-mc-00099.

*some documents and gave his responses to interrogatories.*" That cryptic reference clearly overlooks Mr. Giles' extensive cooperation in non-party discovery.

This matter was conferenced before this Court in Manhattan on December 5, 2011 on a motion returnable before Chief Judge Loretta Preska. Before that appearance, Mr. Giles had moved this Court for a protective order against bank subpoenas served by CNMI counsel against his Texas bank accounts. The protective-order motion sought simply to limit or modify the scope of the subpoenas. As written, the subpoenas effectively reached all attorney-client, family, personal and trust accounts which had no connection to the Millards or their family members.

Despite CNMI's characterization of the conference, Judge Preska took a practical approach and resolved all pending motions and applications by simply directing counsel to work out a Stipulation of Confidentiality to address and protect privacy concerns. Counsel did, in fact, work out the details of an agreement and that Confidentiality Stipulation and Order was then signed by Judge Preska on December 28, 2011 (Document No. 48 in Case No. 1:11-mc-00099*)*. Thereafter, Mr. Giles, through counsel, produced 1296 numbered documents marked "Giles Highly Confidential" by Response to Document Production Requests dated December 28, 2011. With confidentiality protections in place, Mr. Giles then directed his banks to produce hundreds of additional documents to CNMI counsel.

Mr. Giles likewise provided Answers to Interrogatories dated December 27, 2011 in which he addressed questions about 33 different companies identified by CNMI. He further explained his prior legal representation of the Millards during the 1980's.

CNMI later posed additional questions to which responses followed in Answers to Interrogatories dated March 21, 2012. All responses were designated as "Giles Highly Confidential" consistent with the requirements of the Confidentiality Stipulation and Order so ordered by Judge Preska.

3

Counsel for CNMI then served a third wave of discovery demands to which responses followed through Answers dated June 8, 2012.

On this fourth wave of discovery demands, CNMI now seeks the following information through the instant motion to compel:

(1) Disclosure of Mr. Giles' e-mail providers and accounts over the past two years;

(2) A detailed accounting of the steps Mr. Giles has taken to preserve, collect and produce e-mail communications;

(3) Mr. Giles' consent to the discovery and disclosure to CNMI of any communications authored, sent, received, copied or blind copied to specific, enumerated e-mail addresses;

(4) Mr. Giles' disclosure of consideration paid or promised in connection with work on behalf of the defendant judgment debtors (the Millards), and all correspondence related to "consultation or retention of Giles, by or on behalf of the defendant judgment debtors, their family members, or attorneys or representatives of any of them, during the last two (2) years"[4]; and

(5) The identity of a client who sent reimbursement to Mr. Giles' law office via Check No. 1148, payable to American Express, dated February 5, 2010 in the amount of $9,506.23 and drawn on Banque Julius Baer & Cie SA Geneva through account number 0011799574 at J.P. Morgan Chase Bank, N.A.

Mr. Giles has already answered requests 1, 2, 4 and 5 directly in his sworn Declaration. He has used one e-mail address over the past 2 years - which he has identified. And he is serving as an advisor to the Millards' legal team *pro bono* and without execution of any retainer agreement with them or any of their family members. That is clear. As to request 2, he has identified all steps he has taken to preserve, collect and produce relevant e-mails. That is clear. As to request 5, he has made full disclosure and provided a

---

[4] The specific relief requested by CNMI on the instant motion to compel is spelled out in the proposed Order accompanying the motion.

copy of the check in question. The identity of the client who provided such reimbursement remains confidential and has nothing to do with this litigation. The only request somewhat in dispute is therefore the third request. Because of overriding attorney-client and privileged concerns, Mr. Giles cannot give consent for wholesale access to his sole e-mail account containing all his personal, client, fiduciary, family and privileged communications. He has already checked and double checked the e-mail addresses identified by CNMI. More importantly, he has already produced all responsive e-mails and he had said so under oath. That settles the question. As an attorney, he is an officer of the court and he has sworn to his responses under oath. At this juncture, he has also offered to provide copies of the same e-mails with dates and transmission data included if it is so desired.

## POINT I

**TERRY GILES HAS SUPPLIED RESPONSES TO ALL THE REQUESTS POSED; THE REQUESTED E-MAIL SERVER INFORMATION HAS ALREADY BEEN PROVIDED IN HARD COPIES AND IS OTHERWISE PRIVILEGED AND PROTECTED**

As stated above and in the Giles Declaration, Mr. Giles has responded in full to the additional discovery requests. The only issue is access to his proprietary e-mail when he has already, in fact, produced the hard copies of the precise e-mails requested. Although it was not asked for in the original discovery, he has further offered to produce hard copies of the same communications with transmission data and dates intact.

CNMI's counsel has attached as Exhibit 2 to its motion a prior communication from Mr. Giles' legal counsel. It is clear that requests for stored electronic data invoke the Stored Communications Act ("SCA") codified in 18 U.S.C. § 2701 *et seq.* The SCA provides in relevant part that "whoever (1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains,

5

alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished ....." 18 U.S.C. § 2701(a).

In Refco Securities Litigation v. Sugrue, 759 F.Supp.2d 342 (S.D.N.Y. 2011), Judge Rakoff appointed a special master to determine the relevance and privileged nature of attorney-client e-mail exchanges. He concluded that a non-party's e-mails were not discoverable because they proved to be irrelevant and because they remained privileged. Judge Rakoff noted [759 F. Supp.2d at 346] that

> Having correctly concluded that the E-mail was irrelevant to the MDL, Special Master Hedges nonetheless concluded, for reasons obscure, that the E-mail's relevance (or irrelevance) to the MDL was "not the point." *See* 12/21/10 Transcript at 11. This was an abuse of discretion. Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is *relevant* to any party's claim or defense." Fed.R.Civ.P.R. 26(b)(1) (emphasis supplied). Subpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1). *See During v. City Univ. of N.Y.,* No. 05 Civ. 6992(RCC), 2006 WL 2192843, at *2 (S.D.N.Y. Aug. 1, 2006) ("Subpoenas issued under Rule 45 of the Federal Rules of Civil Procedure are subject to Rule 26(b)(1)'s overriding relevance requirement."). Thus, the relevance *vel non* of the E-mail to the MDL is key to whether or not it is discoverable, and it was an abuse of discretion for the Special Master, having found that the E-mail was irrelevant to the MDL, to nonetheless order its production.

In Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 759 F.Supp.2d 417 (S.D.N.Y. 2011), Magistrate Judge Katz explained the import of the Stored Communications Act [759 F.Supp.2d at 423]:

> The SCA provides that "whoever intentionally accesses without authorization a facility through which an electronic communication service is provided; or intentionally exceeds an authorization to access that facility; and thereby obtains ... access to a wire or electronic communication while it is in electronic storage in such system shall be punished ..." *See* 18 U.S.C. § 2701(a). The SCA also creates a civil cause of action, allowing any person who is the victim of a violation of the SCA to seek damages from the violator. *See* 18 U.S.C. § 2707(a). The Court may assess as damages "the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation, but in no case shall a person entitled to recover receive less than the sum of $1,000." 18 U.S.C. § 2707(c). Other appropriate relief may include attorney's fees and litigation costs and, "[i]f the violation was willful or intentional, the court may assess punitive damages." 18 U.S.C. § 2707(b)(3); 18 U.S.C. § 2707(c).

As to the Swiss check in question, Mr. Giles has covered that issue at least three times. Moreover, he provided a copy of the actual check received from a client for reimbursement of travel expenses.

6

CNMI counsel already possesses all the American Express records. That client has nothing to do with the Millards or this litigation.

As to e-mail information, Terry Giles has attested under oath that his sole e-mail server contains attorney-client privileged and confidential communications - even communications exchanged with the very legal team representing the defendants named in this action and copied to the defendants themselves. That legal team has now moved for summary judgment to set aside and strike down these judgments.

It is long settled that a lawyer should preserve the confidences of a client. The Code of Professional Conduct is recognized by both federal and state courts and prescribes appropriate guidelines for professional conduct of the bar. *See* <u>Evans v. Artek Sys. Corp.</u>, 715 F.2d 788, 791 (2d Cir. 1983); <u>NCK Organization Ltd. v. Bregman</u>, 542 F.2d 128 (2d Cir. 1976); <u>Cinema 5, Ltd. v, Cinerama, Inc.</u>, 528 F.2d 1384, 1386 (2d Cir. 1976). The attorney-client privilege is the "oldest of the privileges for confidential communications known to the common law." <u>Upjohn Co. v. U.S</u>., 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) (internal citation omitted). Its purpose is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.*

The main point is that CNMI has already received hard copies of the precise e-mail information they now request consent to access through a private and proprietary server. This is overreaching. In any event, Mr. Giles has stated under oath that he has no control over that server. This request to a non-party concerning a further non-party presses the limits of protected and privileged information. It is likewise violative of the SCA and intrudes upon attorney-client confidences. In light of Mr. Giles' status as a non-party witness and his extensive past cooperation, and based further on the fact that CNMI <u>has</u> the hard copies of the information requested, their request now for forced consent to access a private e-mail and server system should be denied.

## POINT II

**TRANSFER OF VENUE IS APPROPRIATE HERE BECAUSE A PLENARY ACTION IS ONGOING IN FLORIDA FEDERAL COURT WHICH CHALLENGES THE EFFICACY OF THE UNDERLYING JUDGMENTS AND PLAINTIFF'S COUNSEL HAS APPEARED AND IS LITIGATING IN THAT ACTION**

Transfer of venue is governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *See also* Delta Air Lines v. Ass'n of Flight Attendants, 720 F.Supp.2d 213, 217 (E.D.N.Y.2010). It is long settled that "motions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." *See* In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir.1992); *see also* Red Bull Assocs. v. Best Western Int'l, Inc., 862 F.2d 963, 967 (2d Cir.1988); Solar v. Annetts, 707 F.Supp.2d 437, 441 (S.D.N.Y.2010).

Here, the Kobre & Kim firm could easily have brought this application in the Florida Federal District Court where a plenary action is now pending before Judge John Antoon II and Magistrate Judge Karla R. Spaulding. See Exhibit "B" annexed to the Giles Declaration. The instant motion to compel was filed on September 7, 2012. Before then, the Millards had already filed their plenary action against CNMI to vacate these judgments (on August 13, 2012). In fact, the Florida federal court action has been pending since December 1, 2011. Kobre & Kim appeared in that action via Attorney Adriana Riviere-Badell of the firm's Miami, Florida office. *See* Exhibit "B" to the Giles Declaration. The attorneys for the Millards have now filed their summary judgment motion to set aside these judgments.

On a motion under § 1404, the moving party "bears the burden of establishing the propriety of transfer." Ahmed v. T.J. Maxx Corp., 777 F.Supp.2d 445, 449 (E.D.N.Y.2011) (*citing* New York Marine and Gen. Ins. Co. v. Lafarge N.A., Inc., 599 F.3d 102, 114 (2d Cir.2010)). That party "must demonstrate

8

that ... the transferee court is able to exercise jurisdiction over the parties and must be an appropriate venue of the action[ ] and ... [that] the balance of convenience and justice favors transfer." Jones v. City of New York, No. 11–cv–5042 (CBA), 2012 WL 716890, at *1 (E.D.N.Y. March 5, 2012) (quotations omitted).

Courts consider the following factors, among others, in determining whether the balance of convenience and the interests of justice favor transfer: (1) plaintiff's choice of forum; (2) the convenience of witnesses; (3) the location of relevant documents and other physical evidence; (4) the convenience of parties; (5) the locus of operative facts; (6) the availability of process to compel the attendance of unwilling witnesses; (7) the relative means of the parties; (8) the forum's familiarity with governing law; and (9) judicial economy and the interests of justice. *See* Delta, 720 F.Supp.2d at 217; *see also* D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106–07 (2d Cir.2006); Ahmed, 777 F.Supp.2d at 449.

It is respectfully submitted that all of the above factors have been met. The witnesses and all counsel are in Florida. The parties in interest (the Millards) have consented to and chosen Florida venue for their plenary action. The Millards' action was already pending when CNMI filed the instant motion. The motion could have been filed in Florida. Moreover, the Millard family has had ties to the State of Florida for years. This Court will simply be sending a discovery dispute to the very forum in which it belongs. Transfer of venue will bring the cycle of revolving judges and fragmented treatment to an end. This is especially true for Mr. Giles, a Texas resident and an advisor to the legal team appearing in the Florida federal court.

## POINT III

### A RULE 26(c) PROTECTIVE ORDER IS APPROPRIATE IN THESE CIRCUMSTANCES

Pursuant to Federal Rule of Civil Procedure 26(c), the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed.

R. Civ. P. 26 (c)(1).  "The rule serves in part to protect parties' privacy interests," Duling v. Gristede's Operating Corp. 266 F.R.D. 66, 71 (S.D.N.Y. 2010) (*citing* Seattle Times Co. v. Rhinehart, 467 U.S. 20, 35 n.1 (1984)) (additional citation omitted), and "allows for the crafting of appropriate relief," including prohibiting the disclosure or discovery altogether.  Duling, 266 F.R.D. at 71 (citation omitted); *see also* Fed. R. Civ. P. 26(c)(1)(A).

"Under Rule 26(c), the trial court has 'broad discretion…to decide when a protective order is appropriate and what degree of protection is required.'"  Duling, 266 F.R.D. at 72 (*quoting* Seattle Times, 467 U.S. at 36 (additional citation omitted); *see also* Dove v. Atlantic Capital Corp., 96 F.2d 15, 19 (2d Cir. 1992)

For the reasons stated above and based on the detailed factual background provided in the Giles' Declaration, the Movant respectfully submits that a Rule 26(c) protective order is appropriate and warranted in these compelling circumstances.

## CONCLUSION

For all of the foregoing reasons, the Responding party and Cross-Movant, Terry M. Giles, asks the Court to (a) deem the requested production requests satisfied; (b) deny access to his proprietary and protected e-mail server information and privileged communications; (c) transfer the venue of this proceeding the United States District Court for the Middle District of Florida, Orlando Division, in which litigation on the merits is ongoing between these same parties and in which the same counsel for Plaintiff here has appeared of record and is actively litigating; (d) grant a protective order as to the present discovery demands served in this Judicial District as to this non-party who resides in the State of Texas; and (h) grant such other and further relief deemed just, proper and appropriate under the circumstances.

Dated: Newburgh, New York
       September 21, 2012

        Respectfully submitted,

        TARSHIS, CATANIA, LIBERTH
        MAHON & MILLIGRAM, PLLC
        *Attorneys for Non-Party*
        **TERRY M. GILES**

By:    *Richard M. Mahon, II*
        RICHARD M. MAHON, II (RM-9260)
        One Corwin Court, P.O. Box 1479
        Newburgh, New York 12550
        Tel. No. 845-565-1100